## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.   08-CV-01258

(To be supplied by the court)

Randy K. Gometz _____, Plaintiff,

v.

United States of America _____,

Federal Bureau of Prisons _____,

Harrell Watts _____,

Michael K. Nalley _____,

Ron Wiley _____,

John T. Shartle _____,

Mark A. Munson _____,

Maureen S. Cruz _____, Defendant(s).

(List each named defendant on a separate line.)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 14 2008

GREGORY C. LANGHAM
CLERK

---

### PRISONER COMPLAINT

---

(Rev. 1/30/07)

Defendants (Page 2)

H. Church

M. Collins

T. Gomez

T. Sudlow

Fenlon

Hagood

Clark

G. Knox

Manley

A. Osagie

M. Schappaugh

Dalglish

S. Nafziger

Unknown Physician's Assistant

Unknown Mail Room Officer

Cink

## A. PARTIES

1. Randy K. Gometz #35556-118, P.O. Box 8500, Florence, CO, 81226-8500
   (Plaintiff's name, prisoner identification number, and complete mailing address)

2. The United States of America, Office of the Attorney General, 1425 New York Ave,
   (Name, title, and address of first defendant)

   Washington, DC 20530

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? ___ Yes  ✓ No (CHECK ONE). Briefly explain your answer:

   Federal prisoner, defendants, case

3. The Federal Bureau of Prisons, 320 First St., NW, Washington, DC 20534
   (Name, title, and address of second defendant)

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? ___ Yes  ✓ No (CHECK ONE). Briefly explain your answer:

   Federal prisoner, defendants, case

4. Harrell Watts, Administrator of Inmate Appeals, 320 First St, NW, Washington
   (Name, title, and address of third defendant)

   DC 20534

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? ___ Yes  ✓ No (CHECK ONE). Briefly explain your answer:

   Federal prisoner, defendants, case

(If you are suing more than three defendants, use extra paper to provide the information
requested above for each additional defendant. The information about additional defendants
should be labeled "A. PARTIES.")

"A. Parties" (Page 2)

(5)  Michael K. Nalley, Regional Director of BOP, Gateway Complex, Tower II, 8th Floor, 400 State Ave., Kansas City, KS, 66101-2492; Not acting under color of state law; Federal prisoner, defendants, case.

(6)  Ron Wiley, Warden at ADX, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(7)  John T. Shartle, Assistant Warden, address unknown, no longer at ADX; Not acting under color of state law; Federal prisoner, defendants, case.

(8)  Mark A. Munson, Assistant Warden, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(9)  Maureen Cruz, Assistant Warden, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(10)  H. Church, Captain, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(11)  M. Collins, Unit Manager, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(12)  T. Gomez, Unit Manager, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(13)  T. Sudlow, Caseworker, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(14)  Fenlon, Caseworker, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(15)  Hagood, Counselor, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(16)  Clark, Counselor, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(17)  G. Knox, Counselor, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

"A. Parties" (Page 3)

(18)   Manley, Segregation Lieutenant, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(19)   A. Osagie, Physician's Assistant, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(20)   M. Schappaugh, Physician's Assistant, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(21)   Dalglish, Medical Technician, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(22)   S. Nafziger, Clinical Director, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(23)   Unknown Physician's Assistant, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under der color of state law; Federal prisoner, defendants, case.

(24)   Unknown Mail Room Officer, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(25)   Cink, Physician's Assistant, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

## B. JURISDICTION

1.  I assert jurisdiction over my civil rights claim(s) pursuant to:  (check one if applicable)

    _____   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

    ✓   28 U.S.C. § 1331 and ***Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics***, 403 U.S. 388 (1971) (federal prisoners)

2.  I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

    28 USC 2201; 28 USC 2202; 18 USC 4042; 18 USC 4081; 5 USC 551; 42 USC 1917d; 42 USC 12101 (Americans with Disabilities Act); 29 USC 706 (Rehabil-

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case.  If more space is needed to describe the nature of the case, use extra paper to complete this section.  The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

Plaintiff is a federal prisoner at the super-max prison in Florence, CO ("ADX"), and this is a class-of-one action against the defendants in both their official and individual capacities for violating his 1st, 4th, 5th, 6th, and 8th Amendments to the U.S. Constitution. Plaintiff seeks a jury trial and prays for declarative, injunctive, and monetary relief. The issues presented in this complaint are: (1) that 27 years of continuous confinement on lock-down conditions violates the prohibition against cruel and unusual punishment; (2) that confinement in lock-down conditions in general, and at the ADX in particular, has effectively turned Plaintiff's parolable sentences into nonparolable sentences, thereby violating the 5th and 8th Amendment; (3) that placing Plaintiff in lock-down conditions without affording him a hearing, and then holding him there for 27 years, violates his right to due process under the 5th Amendment; (4) that Plaintiff's ongoing confinement in lock-down conditions for 27 years is discriminatory and violates the 5th Amendment; (5) that 27 years of confinement in lock-down conditions constitutes an illegal and unreasonable "seizure" and violates the 4th Amendment; (6) the elimination of PC status, housing, and programs at the ADX without notice, hearing, comment, or publication in the Federal Register violates the Administrative Procedure Act ("APA"); (7) that forcing Plaintiff off PC status, housing, and programs at the ADX, and then forcing Plaintiff on to GP status, housing, and programs without first affording him notice, hearing, or due process violated his 5th Amendment; (8) the elimination of PC status, housing, and programs at the ADX, and then forcing Plaintiff into GP status, housing, and programs violates both the 5th and 8th Amendment; (9) removing Plaintiff from PC status, housing, and programs at the ADX, and then reassigning him to GP status, hous-

"B. Jurisdiction" (Page 2)

itation Act of 1973); 29 CFR 1630; 29 CFR 1613; 28 USC 2671; 28 USC 1346; 28 CFR 540; 28 CFR 541; 28 CFR 524; 8 USC 1481 (Immigration and Nationality Act).

"C. Nature of the Case" (Page 2)

ing, and programs broke a contractual agreement Plaintiff and Defendants signed, and violates the 5th Amendment; (10) Plaintiff continues to be subjected to cruel and unusual punishment via deliberate indifference to his serious medical needs, which violates the 8th Amendment; (11) defendants have delayed and denied Plaintiff testing and treatment for his chronic hepatitis C infection with deliberate indifference to his serious medical needs, in violation of the 8th Amendment; (12) Grievance procedures at the ADX are being implemented in in such a way that it is impossible for Plaintiff to exhaust them in a timely fashion, which denies him access to the courts and violates his 1st and 5th Amendments; (13) defendants have refused to mail legal letters to the ACLU in general, and to attorney Taylor Pendergrass of the ACLU in particular, thereby denying Plaintiff's access to both legal assistance and the courts, which violates the 1st and 6th Amendments; and (14) that the Immigration and Nationality Act, 8 USC 1481, section 349(a) is unconstitutional in that it is discriminatory, a violation of equal protection, and violates Plaintiff's free speech and freedom of religion, which are guaranteed by the 1st and 5th Amendments.

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1. Claim One: 27 years of lock-down violates the 8th Amendment

Supporting Facts: The defendants are at all times in Claim One of the complaint the United States of America, the Federal Bureau of Prisons ("BOP"), Watts, Nalley, and Wiley. In October of 1980 Plaintiff was transferred to the USP at Marion, Illinois, which was already on lock-down status, and remained that way for the ensuing 14 years that Plaintiff remained at that facility. On November 30, 1994 Plaintiff was transferred to the ADX for administrative purposes, to wit, to increase the prison population. Since October of 1980 Plaintiff has at all times been kept in varying degrees of lock-down status. These defendants have individually and severally, in their official and individual capacities, knowingly, willfully, arbitrarily, and capriciously engaged in outrageous conduct with the intent of causing him, and causing him, severe emotional distress, with physical manifestations, by keeping him on lock-down for 27 consecutive years, with no penological purpose in mind, and have done so with deliberate indifference to his serious physical, psychological, spiritual, and medical needs. Such confinement on lock-down status for all those years have caused Plaintiff numerous and serious injuries which include, but are not limited to: clinical depression; thoughts of suicide; paranoia; antisocial tendencies; obsessive-compulsive disorder; feelings of humiliation, degradation, and personal indignation; acute anxiety attacks; sleep disorders ranging from severe insomnia to over-sleeping; malaise; lethargy; fatigue; eating disorders that swing from excessive weight gain to excessive weight loss; dizziness; inability to concentrate; disorientation; headaches; memory loss; degenerative disc disease; herniated disc; back surgery; chronic and debilitating back pain; difficulty and pain in sitting upright, standing, walking, reaching, lifting, and working; cardiovascular deterioration; fractured ankle; tendon and ligament damage to both ankles; ankle pain; balance difficulty; tendon and ligament damage to both knees; knee pain, calcium deposits in both shoulders; torn rotator cuff in left shoulder; shoulder pain and weakness; torn tendon or ligament in right elbow; elbow pain; muscle atrophy; hardening of the arteries; circulatory problems resulting in cold hands and feet; sciatica; sexual impotence; gallstones; gallbladder surgery; arthritis in the fingers of both hands; and various symptoms associated with chronic hepatitis C infection. These injuries have been caused or exacerbated by living and exercising on concrete surfaces for 27 years, a toxic sewage spill at the ADX, and total and deliberate indifference

"D. Cause of Action: Claim One" (Page 2)

toward Plaintiff's pain, until Plaintiff is both legally and medically disabled. Plaintiff's sedentary existence also poses future health risks, such as obesity, diabetes, heart, respiratory, or liver complications. The defendants have caused, are causing, and will continue to cause Plaintiff unnecessary pain. Plaintiff's mental, social, emotional, spiritual, and communicative skills have likewise eroded from the 27 years of lock-down, to the point that he is incapable of normal interaction. Moreover, Plaintiff's physical disabilities — combined with the defendants' refusal to provide him with a means of access — prevents him from going to recreation at all anymore. Consequently, Plaintiff is kept in total isolation and deprived of all human contact.

2. Claim Two: Confinement at the ADX has the practical effect of turning Plaintiff's Parolable sentences into non-parolable sentences, thereby violating the 5th and 8th Amendments to the U.S. Constitution

Supporting Facts: The defendants are at all times in Claim 2 of the complaint the United States of America, the BOP, Watts, Nalley, Wiley. All of Plaintiff's sentences fall under the old law, i.e., pre-Comprehensive Crime Control Act, and are therefore parolable. The Code of Federal Regulations ("CFR") makes available to all inmates in the BOP, including those at the ADX, and including Plaintiff, superior program achievement ("SPA") awards. All together, Plaintiff is eligible for about a 6-year SPA award. SPA awards are recommendations by the 2-year interim parole examiner to accellerate parole eligibility or parole dates. In their written reports, the interim parole examiners in 1998, 2000, 2002, 2004, and 2006 all denied Plaintiff an SPA award on the ground that programming opportunities at the ADX were "limited", and therefore an SPA award was unwarranted. This makes the SPA awards discriminatory and denies ADX inmates, including Plaintiff, equal protection of the CFR, which has the force of law. Furthermore, there is an unwritten rule, policy, practice, and custom in effect within the BOP that paroles are rarely, if ever, granted at or from Level 6 supermax prisons. Discovery will prove this. A parole examiner, Mr. Chait, told Plaintiff at his 1998 parole hearing that if Plaintiff ever hoped to be paroled at all it would have to begin by Plaintiff getting transferred out of the ADX. Mr. Chait told Plaintiff that if the BOP did not trust Plaintiff enough to house him around normal maximum security inmates away from the ADX, that no one could expect the U.S. Parole Commission to unleash such a man on society. In addition, defendant Sudlow told Plaintiff on 5-17-08 that in the 14 years she has been a caseworker at the ADX she knows of no inmate to have been paroled from the ADX. Plaintiff can add that in the 28 years he has been at the BOP's two supermax prisons — Marion and the ADX — he knows of no inmate that was paroled from those prisons either. But again, discovery will flesh this out. Then, too, we have the words of the parole examiners themselves, each of whom said they think Plaintiff should never be paroled, which effectively has turned Plaintiff's parolable sentences into de facto non-parolable sentences. The defendants have acted knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference in their official and individual capacities by keeping Plaintiff at a facility where they know paroles are not granted (nor SPA awards), thereby inflicting emotional and psychological pain, injury, and distress on Plaintiff — with physical manifestations — without penological purpose. Further, these injuries will continue without the intercession of the court. (See: Claim 1 for a list of emotional and psychological pain, injuries, and distress with physical manifestations). Finally, the defendants will continue this unconstitutional conduct unless the court intervenes.

3. Claim Three: The failure to provide Plaintiff with any kind of hearing prior to placing him in prisons on permanent lock-down violates both his procedural and substantive right to due process under the 5th Amendment to the U.S. Constitution.

Supporting Facts: The defendants are at all times in Claim 3 of the complaint the United States of America, the BOP, Watts, Nalley, and Wiley. At no time prior to Plaintiff's confinement in Marion or the ADX did the defendants allow him to attend a hearing, call witnesses, present documentary evidence, make a written or oral statement, to object, or even to plead for clemency prior to being placed in prisons on permanent lock-down. Nor has Plaintiff been provided with any of these due process protections since the Supreme Court visited this issue in 2005 and found that such due process protections were necessary before placing inmates in prisons on permanent lock-down. Plaintiff's ongoing confinement in lock-down for the last 27 years is an atypical and significant hardship. In fact, Plaintiff's confinement in lock-down conditions for 27 years for aiding and abetting are atypical to anything found in the entire history of the BOP in general, and at Marion or the ADX in particular. No inmate, except for Plaintiff, has ever been kept in lock-down for 27 years for the crime of aiding and abetting without notice, hearing, and due process protections. Plaintiff has both a life and liberty interest in avoiding such prolonged confinement; that 27 years of such confinement is cruel and unusual punishment that is being applied without due process; that the defendants have acted knowingly, willfully, arbitrarily, and capriciously; that there is no penological justification in denying Plaintiff these minimal due process protections; that such denial violates both procedural and substantive due process; and that 27 years of such confinement should shock both the conscience and evolving standards of decency in both the public and in the courts. By holding classification hearings outside of Plaintiff's presence the defendants have acted unreasonably, arbitrarily, and capriciously because there is no need for such secrecy. Classification hearings that result in placing inmates in lock-down for 27 years, which also results in adverse parole consequences, are weighty affairs and should only be allowed when subject to judicial review. The defendants, however, not only refuse to let Plaintiff participate in the proceedings, but they maintain no records of what was discussed, what their reasoning was, what evidence was relied upon, or what kind of process was used that a court can review. Defendants have knowingly, willfully, arbitrarily, and capriciously denied Plaintiff due process for 27 years, which has inflicted emotional and psychological pain, injury, and distress on Plaintiff — with physical manifestations — without any penological purpose for the deprivation. Further, the defendants will continue their unconstitutional treatment toward Plaintiff unless the court intervenes. (See Claim 1 for a list of emotional and psychological pain, injuries, and distress with physical manifestations). The defendants are being sued in their official and individual capacities.

4. Claim Four: The Plaintiff's ongoing confinement in lock-down conditions for 27 years has been, is, and will continue to be, invidious discrimination and violative of his 5th Amendment to the U.S. Constitution

As a class-of-one Plaintiff has been, and will continue to be, singled out for invidious discrimination by the defendants, who at all times in Claim 4 of the complaint are the United States of America, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Collins, Gomez, Sudlow, Fenlon, Knox, Hagood, and Clark, for aiding and abetting another inmate, i.e., passing him a knife, in the murder of a correctional officer in 1983. The defendants are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously singling out Plaintiff for invidious discrimination, with no penological justification, for a crime that is 25 years old; that this constitutes punishing Plaintiff for the "unchangeable circumstance" of an old conviction. Examples of the invidious discrimination Plaintiff has endured for the last 25 years appear more fully in Plaintiff's original complaint, which he incorporates herein (being that Plaintiff has been instructed by the court to be brief), which include such things as multiple attempts by defendants to have Plaintiff assaulted and killed; falsifying Plaintiff's custody and classification scores to justify keeping him at the ADX; written false misconduct reports, which were later expunged, to sabotage Plaintiff's 12½ years of good conduct and transfer prospects; placed Plaintiff in GP status, housing, and programs on 7-28-06 even though Plaintiff was admitted to PC by the defendants on 8-16-02 because he was "precluded" from being housed in GP in any U.S. Penitentiary for verified safety concerns; and imposed disciplinary sanctions on Plaintiff without due process by removing him from the PC step-down/pre-transfer unit without cause; locking up Plaintiff for 9 days without providing him with a lock-up order; the defendants have falsified documents to cover up their unconstitutional behavior; misapplied "management variables" to justify keeping Plaintiff at the ADX; the confiscation and destruction of Plaintiff's personal property; turning away approved visitors at the front gate because the defendants' computer showed no

"D. Cause of Action: Claim Four" (Page 2)

one was on Plaintiff's approved list even though Plaintiff had just received a visit from his mother one month earlier. Again, see the original complaint for details. The bottom line here is that the defendants are continuing a 25 year old pattern, custom, policy, and practice of discrimination to continue to punish the Plaintiff disproportionately, and to treat him differently, and more arbitrarily and capriciously, than inmates similarly situated in the BOP or the ADX. The defendants' sole motivation in their discriminatory treatment of Plaintiff is one of extreme ill-will and malice toward him for his limited role in a crime that occurred in 1983. Whatever the penological purpose the defendants may have once had to keep Plaintiff in lock-down conditions 27 years ago, that justification has long since passed. These defendants have acted knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference toward the emotional and psychological pain, injury, and distress they have inflicted on Plaintiff — with physical manifestations — without any penological justification. These violations are sure to continue without intervention by the court. (See: Claim 1 for a list of emotional and psychological pain, injuries, and distress with physical manifestations)

5. Claim Five : Plaintiff's ongoing confinement in lock-down conditions for 27 years constitutes and unreasonable "seizure" under the 4th Amendment to the U.S. Constitution.

The defendants are at all times in Claim 5 of the complaint the United States of America, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox. The defendants have acted knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference to Plaintiff's serious medical needs and constitutional rights — in both their official and individual capacities — by keeping Plaintiff in lock-down conditions for 27 years. The defendants have inflicted a punishment on Plaintiff that amounts to an atypical and significant hardship that has no penological purpose, and constitutes an unreasonable and illegal seizure against his person, in violation of the 4th Amendment. The defendants have had repeated opportunities to put an end to Plaintiff's unreasonable and illegal seizure — indeed, every 6 months for the last 27 years — but have maliciously failed to do so. The defendants have acted knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference to the emotional and psychological pain, injury, and distress they have inflicted on Plaintiff — with physical manifestations — without any penological purpose. The defendants will continue to violate Plaintiff's 4th Amendment unless the court grants him relief. (See: Claim 1 for a list of emotional and psychological pain, injuries, and distress with physical manifestations).

6. Claim Six : The elimination of PC status, housing, and programs at the ADX constitutes a legislative rule change that was done without notice, hearing, comment, or publication in the Federal Register, all of which violates the APA and the 5th Amendment to the US Constitution

The defendants are at all times in Claim 6 of the complaint the United States of America, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox. In the 34 years Plaintiff has been in federal custody the BOP has always provided inmates in need PC status, housing, and programs. This has been true nationwide in every BOP facility. When the ADX opened on 11-30-94 there was a weak form of PC status in place, but there were no cell-blocks or programs exclusively for PC inmates. If an inmate wanted to be placed on PC status he had two options: go to the SHU and stay there, or go to a GP unit and refuse group recreation. Although GP inmates had a stepdown/pre-transfer program from the very beginning, PC inmates did not receive these benifits until March of 1998. Plaintiff debriefed on 1-23-01, i.e., became an informant against prison gangs, and was admitted into the PC program on 8-16-02 because the defendants officially decreed there was a "verified" safety need that "precludes" placing him in any maximum security penitentiary. On 7-25-06 the defendants removed Plaintiff from PC status, housing, and programs, reclassified him to GP status, housing, and programs without notice or hearing on 7-28-06, and then eliminated PC status, housing, and programs at the ADX in their entirety. Being that defendants have a statutory duty to provide for Plaintiff's safekeeping, protection, segregation — and a regulatory duty to provide for Plaintiff's PC status, housing, programs, and CIM separation — any policy statement that puts an end to that statutory and regulatory duty is a legislative rule change that must be done in accordance with the notice, hearing, comment, publication requirements of the APA. Prior to 7-28-06 PC status, housing, and programs have always been available, and still are, to all inmates in the BOP except at the ADX. The length of time these rules have been in effect gave Plaintiff a reasonable expectation that such PC

"D. Cause of Action: Claim Six" (Page 2)

status, housing, and programs/services would continue. Plaintiff had no reason to believe PC status, housing, and programs would be taken away without notice, hearing, opportunity to comment, and publication in the Federal Register. The defendants acted arbitrarily, capriciously, knowingly, willfully, and with deliberate indifference, as evidenced by the length of time the defendants deliberated both before and after making this move. The defendants have acted without any penological purpose, in both their individual and official capacities, by engaging in retroactive rule-making (i.e., eliminating the PC step-down/pre-transfer program while Plaintiff was in it), and have knowingly, willfully, arbitrarily, and capriciously inflicted emotional and psychological pain, injury, and distress on Plaintiff — with physical manifestations — without any penological purpose. The defendants will continue to violate the APA and 5th Amendment rights of Plaintiff unless the court puts a stop to it. (See: Claim 1 of the complaint for a list of emotional and psychological pain, injuries, and distress with physical manifestations)

7. Claim Seven: Forcing Plaintiff out of PC status, housing, and programs, and then reassigning him to GP status, housing, and programs without notice, hearing, or due process violates the 5th Amendment to the U.S. Constitution

The defendants are at all times in Claim 7 of this complaint the United States of America, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox. The defendants have acted in both their official and individual capacities, wherein they knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference violated Plaintiff's right to due process under the 5th Amendment by removing him, without cause, from PC status, housing, and programs, and reassigning him to GP status, housing, and programs instead. The defendants placed Plaintiff in PC status, housing, and programs because they made an express and documented finding that a verified safety threat existed against Plaintiff that precluded his placement in any GP setting, which ostensibly includes the ADX, on 8-16-02. And yet 4 years later, on 7-28-06, the defendants reversed themselves, without any notice, hearing, or explanation, and reassigned Plaintiff back into the same GP that they had once found a verified safety threat against Plaintiff's life that precluded housing him there. The defendants' actions are inexcusable here, because _nothing_ in Plaintiff's circumstances have changed between 8-16-02, when he was approved for placement in PC, and 7-28-06, when he was returned to GP status, housing, and programs. Plaintiff is still a known informant, the Aryan Brotherhood ("AB") and Mexican Mafia still have an open contract on Plaintiff's life, the ADX still contains the BOP's most violent and dangerous inmates, it is still open season on informants in prison, and Plaintiff's life is still in danger. Further, Plaintiff has a liberty interest in not being removed from a program, to lose privileges, to lose housing, and to lose a job — which are listed in the CFR as _disciplinary_ sanctions for a finding of guilt on rule infractions — without first receiving due process protections. Nevertheless, Plaintiff was removed from PC status, housing, and programs by defendants on 7-25-06 with-

"D. Cause of Action: Claim Seven" (Page 2)

out notice, hearing, or due process, then placed in the SHU, and sustained four disciplinary sanctions — loss of privileges, removal from program, change in housing, and loss of job — without being afforded due process protections at all. Plaintiff asserts a property interest in not being removed from PC status, housing, and programs by virtue of 18 USC 4042, 18 USC 4081, which requires defendants to provide him with safekeeping, protection, and segregation; and 28 CFR 541.23 (a)(1) through (8), and 28 CFR 524.72 which provides for Plaintiff's PC status and CIM separation from the AB and Mexican Mafia. Furthermore, Plaintiff asserts a life interest in not being removed from PC status, housing, and programs at the ADX. There can be no penological interest in reassigning Plaintiff from PC to GP status, housing, and programs, because the Plaintiff's need for protection has not changed. By removing Plaintiff from PC status, housing, and programs, and then placing him in GP status, housing, and programs instead, the defendants have: (A) failed in their statutory duty to provide Plaintiff with safe housing and protection; (B) violated their own rules; (C) made legislative rule changes to the CFR without notice, hearing, comment, or publication; (D) abused their discretion; (E) engaged in retroactive rulemaking; (F) acted arbitrarily and capriciously by denying Plaintiff due process; (G) acted contrary to the law; (H) endangered Plaintiff's life and safety; (I) exceeded their statutory authority; (J) discriminated against Plaintiff; (K) worked substantive rule changes into existing regulations; (L) made dangerous departures from past BOP policies, practices, customs, and interpretations of their statutory and regulatory duties; (M) changed the legal landscape at the ADX; (N) failed to examine or articulate a rational connection between the facts of Plaintiff's case and their actions in removing him from PC status, housing, and programs, or the consequences of eliminating these PC offerings at the ADX; (O) failed to take a hard look at the consequences of removing and eliminating PC status, housing, and programs at the ADX; (P) cited no rational penological

"D. Cause of Action: Claim Seven" (Page 3)

purpose in removing Plaintiff from PC status, housing, and programs, for the elimination of the PC offerings at the ADX, or for reassigning him back to GP status, housing, and programs; (Q) cited no substantial evidence in their decision-making process that justifies or supports their reasons for removing Plaintiff from PC status, housing, and programs, or for the elimination of these PC offerings at the ADX, or for reassigning Plaintiff back to GP status, housing, and programs; (R) applied disciplinary sanctions against Plaintiff without any due process; (S) advanced no principled reason for changing PC policy and reassigning Plaintiff to GP; (T) denied Plaintiff the opportunity to present probative evidence or argue against placing him in GP; and (U) left the court with little or no record to review, because most of defendants' actions were done in secret, with minimal-to-no documentation, and no witnesses. These defendants have acted knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference to the emotional and psychological pain, injury, and distress they have inflicted on Plaintiff — with physical manifestations — without any penological purpose. Furthermore, the defendants will continue inflict these injuries until the court intervenes. (See: Claim 1 for a list of emotional and psychological pain, injuries, and distress with physical manifestations)

8. Claim Eight: The elimination of PC status, housing, and programs at the ADX, and the removal of Plaintiff from these PC offerings, and forcing him into GP status, housing, and programs, violates the 5th and 8th Amendments to the U.S. Constitution

The defendants are at all times in Claim 8 of the complaint the United States of America, the BOP, Watts, Nalley, Jhartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox. The defendants have acted knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference to Plaintiff's life and safety when they eliminated PC status, housing, and programs at the ADX on 7-28-06, and reclassified all PC inmates, including known informants like Plaintiff, to GP status, housing, and programs, thereby requiring these ex-PC inmates to forfeit their 8th Amendment right to personal safety just to reobtain the governmental benefit they once enjoyed in the PC step-down/pre-transfer unit in safety. The defendants have enacted an unconstitutional conditions doctrine at the ADX where Plaintiff is compelled to put himself in physical contact with the BOP's most dangerous prisoners just to be eligible for transfer out of the ADX. Defendants have violated every rule of penology and common sense by mixing PC and known informants together with the BOP's most violent and dangerous prisoners in GP. In May of 2007, for example, the control room officer in D-Unit accidentally opened the wrong door in the small outside recreation cages that gave an unrestrained inmate physical access to a fully restrained inmate who was widely known to be an informant. On 6-26-07 the control room officer in D-Unit experienced an electrical malfunction where three cell doors on Plaintiff's tier mysteriously popped open and could not be closed. On 12-6-07 the control room officer in D-Unit lost control of all cell doors, and the tier's outer gates had to be secured with chains and padlocks. These are just three examples among many, on why GP inmates and PC/known informants have historically been housed separately. Mistakes like these happen. Confining Plaintiff with these GP inmates resulted in him being routinely and incessantly cursed and threatened (grievances 448747 and 449971); being subjected to sleep deprivation (grievance 449969); being identified by an inmate hanging a large "RAT" sign in his window and then fingering the Plaintiff to all the inmates on the outside rec-

"D. Cause of Action : Claim Eight " ( Page 2)

reation yard as being the "RAT" in question ( grievance 467435). As the last example shows, by housing known informants like Plaintiff with the BOP's most dangerous inmates in GP, the defendants are actually aiding and abetting in the physical identification of known informants for future attack. Considering how Plaintiff is compelled to go to the GP step-down/pre-transfer unit — where he will be in physical contact with the same men who witnessed the " RAT" identification process — this is especially ominous. Further deliberate indifference by defendants can be found in the way they ignored, and still ignore, holes in the ADX security that Plaintiff pointed out to them that allow inmates physical access to their enemies. Plaintiff explained these holes on 7-12-07, 7-24-07, 8-12-07, and 9-4-07. The Plaintiff's life is also endangered according to the law suit filed by the guard's union, the AFGE, Local 1302, due to unsafe working conditions the staff allege is the result of severe staff shortages/cuts at the ADX between 7-27-07 and 9-1-07, which led to the elimination of 530 positions; and that current staff members ( B. Batulis, President of AFGE, Local 1302) and ex-staff members ( C. Hodge) have publicly blamed defendant Wiley for making the ADX an unsafe place to work where one officer is required to perform the duties of work intended for 3 or 4 people. The defendants' deliberate indifference towards Plaintiff's life and safety can be found in their intent to have him assaulted and/or murdered by placing him — a known informant against the AB and Mexican Mafia with an open contract out on his head — in the GP step-down/pre-transfer unit on 5-17-07, where not only would he be required to give GP inmates daily, physical access to him, but where no less than 10 AB members and associates were housed ( who in turn could be on hand to pressure the GP inmates on Plaintiff's tier to attack him). The motivations for defendants' outrageous conduct is three-fold: to have Plaintiff attacked in retaliation for his involvement in the murder of a guard 25 years ago; to have Plaintiff attacked in retaliation for exercising his constitutional rights by filing grievances in preparation for this law suit; and to cause Plaintiff extreme emo-

"D. Cause of Action: Claim Eight " (Page 3)

tional and psychological pain, injury, and distress — with physical manifesta-
tions — as he sat in terror for 3 days and nights as he waited to be murdered.
The defendants placed Plaintiff in PC on 8-16-02 because they found a "veri-
fied" safety threat existed that "precludes" placing him in any GP maximum
security prison. Yet these same defendants removed Plaintiff from PC on 7-25-
06 even though the verified safety threat remained unchanged. And worse, on
5-17-07 the defendants actually conspired to have Plaintiff assaulted and/or mur-
dered by placing him in the GP step-down/pre-transfer unit. The predicate acts
of this conspiracy are: (1) the repeated recommendations by Collins, Sudlow, and
Knox for Plaintiff to be placed in the GP step-down/pre-transfer unit every 3 or
4 weeks, even after Wiley denied their recommendation in February of 2007 and
said Plaintiff would not be eligible for review again for 6 months; (2) that de-
spite the warden's denial of advancing Plaintiff to the GP step-down/pre-
transfer unit in February of 2007, where Plaintiff was not eligible for review
again until August of 2007, Munson and Cruz reviewed Plaintiff again on
5-2-07 — based on the unsolicited recommendations of Collins, Sudlow, and Knox
— denied their recommendation, and said Plaintiff wouldn't be eligible for review
again for 6 months, or until November of 2007; (3) that despite all this, de-
fendants Collins, Sudlow, and Knox again recommended Plaintiff be advanced to the
GP step-down/pre-transfer unit, and just 15 days later, Munson, Cruz, Church,
Wiley, Gomez, Fenlon, and Hagood all agreed to approve that recommendation,
and placed Plaintiff in that GP unit on 5-17-07; (4) that although Collins told
Plaintiff he had been denied placement in the GP step-down/pre-transfer unit
in February of 2007 because the presence of two AB members in that unit
raised safety concerns that made Plaintiff's placement there unfeasible at that
particular time — a statement that was later affirmed to be true by defend-
ants Wiley, Nalley, and Watts — these same defendants placed Plaintiff in the
same GP step-down/pre-transfer unit just 3 months later when the number

* D. Cause of Action : Claim Eight " (Page 4)

of AB members and their associates had quintupled. The defendants did all this despite their knowledge that Plaintiff was a known and documented informant against the AB; that Plaintiff had an open contract out on his life; that Plaintiff had officially been placed on CIM status and was supposed to be separated from the AB and Mexican Mafia; that there were numerous AB members in the GP step-down unit before defendants placed Plaintiff there; that Plaintiff would be required to give GP inmates physical access to himself as a part of being in the GP step-down program; that the ADX houses the most violent and dangerous prisoners in the BOP; that GP inmates would be required to attack known and documented informants at the ADX; that the AB have a long and well-deserved reputation for making, obtaining, and using weapons against their enemies; that the AB have a long history of getting and using cutting devices like hacksaw blades, files, etc to get at their enemies; and that the AB, particularly at the ADX, have a long track record of cajoling and coercing GP inmates to commit acts of violence on their behalf. Considering the numerous administrative remedies Plaintiff has filed saying he wanted to be returned to PC, and that he would be unable to go through the GP step-down/pre-transfer program in safety, it is hard to imagine how the defendants' actions in placing him in the GP step-down unit was anything except deliberate indifference and attempted murder. After Plaintiff complained of suspicious behavior between AB members and an inmate who would be on Plaintiff's future recreation group, the Plaintiff was placed in the SHU on 5-21-07. Despite repeated written and verbal requests for a lock-up order, which according to the CFR must be issued in 24 hours, Plaintiff did not receive his for 9 full days. Consequently, defendant Manley violated Plaintiff's due process. In an attempt to prevent the defendants from sending another ex-PC/known informant to certain attack and probable death, Plaintiff wrote the FBI on 8-26-07 asking for an investigation and indictment of Watts, Nalley, Wiley, Cruz, Church, Collins,

"D. Cause of Action : Claim Eight" (Page 5)

Sudlow, and Knox. Plaintiff's mother and brother likewise mailed a letter to the FBI on 9-20-07 asking for an investigation and indictments. Unfortunately, the FBI's lack of action resulted in another known informant / WITSEC inmate being sent to the GP step-down/pre-transfer unit in February of 2008 (named Kinsey Lewis) where he was immediately stabbed. Incredibly, as recently as March of 2008 the defendants are still recommending Plaintiff for placement in the GP step-down/pre-transfer unit. The defendants have done all of these things knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference to Plaintiff's health and safety. As a result of defendants' actions Plaintiff has suffered, and will continue to suffer, extreme emotional and psychological pain, injuries, and distress — with physical manifestations — without any penological purpose. The defendants are being sued in their official and individual capacities for conspiring, and attempting, to violate Plaintiff's 8th Amendment by having him assaulted or murdered. Plaintiff incorporates and preserves all the facts and details contained in his original complaint. (See: Claim 1 for a list of emotional and psychological pain, injuries, and distress with physical manifestations).

9. Claim Nine: Removing Plaintiff from PC status, housing, and programs at the ADX and reassigning him to GP status, housing, and programs constituted a breech of contract and violated the 5th Amendment

The defendants are at all times in Claim 9 of the complaint the United States of America, the BOP, Watts, Nalley, Wiley, Sharttle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox. Each of these defendants knowingly, willfully, arbitrarily, and capriciously violated Plaintiff's 5th Amendment and stand in breech of a signed contract, and are being sued in their official and individual capacities for conduct that has no penological purpose. Each of these defendants were aware of the existence of the contract, because it was standard operating procedure for all PC inmates going to the PC step-down/pre-transfer unit to sign the contract before being admitted in the unit. Plaintiff signed his contract shortly before being admitted to the PC step-down/pre-transfer unit on 7-8-04. The document was an express agreement, written in words chosen by defendants, that was mandatory for Plaintiff to sign and agree to prior to being admitted into the unit, that said if Plaintiff agreed to abide by all 37 points of the contract, that defendants would fulfill their part of the bargain by allowing Plaintiff to remain in the PC step-down/pre-transfer unit. According to the terms of the contract there were only two reasons a person could be removed from the PC step-down/pre-transfer unit: being found guilty of a rule infraction, or demonstrating an inability to continue in the program. This latter proviso was commonly understood to mean behavior that did not warrant a misconduct report, but was inappropriate (such as poor attitude, poor work habits, failure to complete required programs, etc). But Plaintiff was removed for a third and totally unauthorized reason. Defendant Sudlow told Plaintiff, in writing, that he was removed because of a "mission change". Defendants have knowingly, willfully, arbitrarily, and capriciously breeched Plaintiff's contract and violated his 5th Amendment, which inflicted emotional and psychological pain, injuries, and distress on Plaintiff, with physical manifestations; and they will continue to violate Plaintiff's rights until the court intervenes. (See: Claim 1 for a list of emotional and psychological pain, injuries, and distress with physical manifestations).

10. Claim Ten: Plaintiff continues to be subjected to cruel and unusual punishment, with deliberate indifference, to his serious medical needs, in violation of the 8th Amendment to the U.S. Constitution

Defendants are at all times in Claim 10 of the complaint the United States of America, the BOP, Watts, Nalley, Wiley, Collins, Sudlow, Knox, Nafziger, Dalglish, Osagie, Schappaugh, Cink, and an Unknown Physician's Assistant. Defendants are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference and outrageous conduct toward Plaintiff's serious medical conditions. Defendants have denied, delayed, and withheld adequate treatment to Plaintiff for close to 20 years. Defendants have exacerbated, and in some cases caused, Plaintiff to suffer wanton and unnecessary pain. Plaintiff was diagnosed with degenerative disc disease many years ago, which is universally known to be a pain producing ailment, and yet defendant Nafziger failed to adequately train his staff how to treat sciatic nerve pain, and defendants Osagie, Schappaugh, and an Unknown Physician's Assistant routinely refuse to respond to Plaintiff's requests for emergency/pain treatment, by refusing to come examine, treat, or refer Plaintiff for further examination. Defendant Nafziger also refused to provide Plaintiff with pain medication, ultra-sound treatments, deep-heat therapy, or physical therapy prescribed for Plaintiff "indefinitely" by Dr. Park and Dr. Pearson at the Federal Medical Center in Springfield, MO in March of 2001. Defendants United States of America and the BOP, through their employees at the USP Marion, ordered procedures that would in fact conceal, rather than reveal, Plaintiff's disc disease and excruciating and crippling pain for over 5 years. After a herniated disc was removed in 2001 Plaintiff eventually received a medical disability slip ("MDS") which permanently proscribed Plaintiff from lifting anything heavier than 25 lbs. Upon the numerous occasions Plaintiff has sought medical treatment for his pain and degenerative disc disease, defendants Osagie and Schappaugh routinely tell Plaintiff "There's nothing we can do". On the evening of 8-10-07 Plaintiff sought medical attention for back pain, and the Unknown Physician's Assistant refused to respond to Plaintiff's medical emergency and come to

"D. Cause of Action: Claim Ten " (Page 2)

the unit to examine or treat him. When Plaintiff repeated the call for help at 1:00 a.m. on 8-11-07 the control room officer informed Plaintiff he called the hospital and the Physician's Assistant on duty told him that he would not come to the unit to examine or treat the Plaintiff. When Plaintiff wrote the hospital on 8-12-07 asking for the name of the Unknown Physician's Assistant who refused to examine or treat him for sciatica, defendant Schappaugh answered the letter and said they were aware of Plaintiff's longstanding back problems, but that Plaintiff's kind of pain was not considered an emergency. In September of 2007 defendant Knox knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference assigned Plaintiff a job he was both medically excused from doing (e.g., the MDS), and physically incapable of doing, in retaliation for telling Knox he would be named as a defendant in this case, and which resulted in Plaintiff sustaining a serious, painful, debilitating injury to his back on 12-11-07. Defendant Cink left Plaintiff writhing in pain in the wet snow, shivering with cold for over 20 minutes before responding to the call. Despite asking for bag lunches to be delivered instead of trays for the next 3 days, which could be tossed to Plaintiff in bed and spare him the pain and humiliation of having to crawl to receive and return food trays, Cink did not deliver the requested bag-lunch authorization slip until it had already expired. Consequently, Plaintiff was forced to suffer the indignity and pain of crawling for his food and crawling to return his food trays. Plaintiff was forced to crawl for food, use of the toilet, to retrieve mail, law books, to shower, drink water, and whatever else for 8 days after sustaining this injury. Considering the severity of Plaintiff's injury and disability, defendants Cink and Nafziger should have admitted Plaintiff to the infirmary, provided him with bed pans, and spared him the pain and indignity of crawling on the floor for 8 days. By failing to provide this minimal care, however, defendants United States of America, the BOP, Nafziger, Cink, and Osagie elected to inflict wanton and unnecessary pain of Plaintiff with deliberate indifference to his serious medical needs, and with the express intent of causing degradation,

"D. Cause of Action: Claim Ten" (Page 3)

humiliation, dehumanization, and to needlessly inflict emotional, physical, and psychological distress on Plaintiff with no penological purpose. On 12-14-07 Plaintiff took one of the medications prescribed for his back injury at about 9:00 A.M., and about an hour later Plaintiff experienced severe chest pains that required him to hit the duress button and call for help. Convinced he was having a heart attack, Plaintiff crawled painfully back to bed and awaited treatment. Twenty minutes later defendant Osagie arrived and insisted that a possible heart attack victim crawl out of bed, and crawl to the bars for treatment. Plaintiff argued about this for 10 or 15 minutes, saying he did not think a person in the throes of a heart attack should move at all. But Osagie was insistant, Plaintiff attempted to comply, and collapsed in pain, semi-conscious, half way there. Plaintiff then began experiencing excruciating, explosive pain in his brain as a result of these exertions that went on for 45 minutes. Osagie attempted, but was unable, to get an EKG reading either through ineptitude or Plaintiff's uncontrollable convulsions of pain. Osagie opined that Plaintiff was having an "anxiety attack". The defendants United States of America, the BOP, and Nafziger are being sued in their official and individual capacities for their failure to train physician's assistants in the proper treatment of possible heart attack victims, i.e., not forcing them to crawl for treatment and administering EKG's. Defendant Osagie is being sued in his official and individual capacities for knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference by forcing a possible heart attack victim to crawl for treatment, which resulted in a brain aneurysm or trauma that left Plaintiff permanently impaired, and caused the infliction of wanton an unnecessary pain. The following day, on 12-15-07, Plaintiff again took one of the medications prescribed for his back injury at 3:00 p.m., and about an hour later Plaintiff again experienced crushing chest pains, difficulty in breathing, and heart attack symptoms. After hitting the duress button defendant Dalglish finally arrived after 25 minutes, and upon being informed that

"D. Cause of Action : Claim Ten" (Page 4)

Plaintiff was unable to walk downstairs to the examination room, she said she would have to call her supervisor to see if additional staff could be located to carry Plaintiff downstairs. Dalglish returned 45 minutes later, saying that sufficient staff could not be found to carry Plaintiff downstairs, and found Plaintiff in a puddle of urine and convulsing in pain from the explosions occurring within his brain. After taking an EKG reading Dalglish had two officers lift Plaintiff from the floor and place him in bed — still soaked in urine — and left Plaintiff in that condition. Defendants United States of America, the BOP, Nafziger are being sued in their official and individual capacities for failing to train Dalglish on standard, appropriate hospital care in patient hygiene., e.g., not leaving them to wallow in urine-soaked clothes and bedding. Defendants United States of America, the BOP, and Wiley are being sued in their official and individual capacities for failing to maintain and/or deploy a sufficient number of staff at the ADX to deal with medical emergencies. Dalglish acted knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference by delaying treatment for an hour, and then leaving Plaintiff, who was totally disabled, in urine-soaked clothes and bedding. Defendants United States of America, the BOP, and Nafziger are being sued in their official and individual capacities for failing to train physician's assistants to check to see if certain medications should not be mixed with medications the Plaintiff was already taking before prescribing new medications, that result in bad reactions, extreme pain, permanent disabilities, and psychological and emotional trauma with physical manifestations. Defendant Osagie is being sued in his official and individual capacities for knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference by prescribing medications to Plaintiff that clearly warn should not be mixed with Fluoxetine, which Plaintiff was already taking. Plaintiff believes, and therefore alleges, the new medications may have been responsible for Plaintiff's heart attack/ brain aneurysm/

"D. Cause of Action : Claim Ten " (Page 5)

pain/permanent memory loss. Defendants United States of America, the BOP, and Nafziger are being sued in their official and individual capacities for failing to examine, treat, or order any CAT scans or MRI's of Plaintiff's brain after he experienced these heart attack/brain aneurysm/memory loss symptoms. Defendants United States of America, the BOP, Watts, Nalley, Wiley, Collins, Sudlow, and Knox are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference by failing in their role in the administrative remedy process to intervene, correct, and stop the unconstitutional behavior of the BOP personnel identified in Plaintiff's grievances; that instead they chose to affirm, approve, accede, and acquiesce to the BOP personnel's unconstitutional conduct toward Plaintiff. These defendants have failed in their supervisory capacities to train, monitor, and correct BOP employees, and have made themselves liable because there was, and is, no penological rationale to justify their actions and inactions. All of the defendants named herein have acted knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference to Plaintiff's serious medical needs, and have violated Plaintiff's 8th Amendment by inflicting, and continuing to inflict, emotional and psychological pain, injury, and distress on Plaintiff — with physical manifestations. (See: Claim 1 for a list of emotional and psychological pain, injuries, and distress with physical manifestations). These constitutional violations will continue unless the court intervenes

11. **Claim Eleven:** Delay and denial of treatment with deliberate indifference to Plaintiff's chronic hepatitis C infection, which violates the 8th Amendment to the U.S. Constitution

Defendants are at all times in Claim 11 of the complaint the United States of America, the BOP, Watts, Nalley, Wiley, Collins, Sudlow, Knox, and Nafziger, and they are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference violating Plaintiff's 8th Amendment by denying, delaying, and withholding treatment to Plaintiff's serious medical needs with no penological justification. After testing positive for hepatitis C infection in the mid-1980's and being placed on chronic care status for the next 18 or 19 years (which included mandatory blood tests twice a year to monitor Plaintiff's AST and ALT levels), Plaintiff was removed from chronic care status by Dr. Leyba at the ADX in April of 2003 for no other reason than to reduce lab costs by 50% annually. Plaintiff vigorously objected to being removed from chronic care status, but he remained off chronic care for the next 40 months. During gallbladder surgery in May of 2006 Dr. King put in his report that Plaintiff's liver appeared "cirrhotic". After renewing his request to be returned to chronic care status and to have a liver biopsy done on Plaintiff, defendant Nafziger finally agreed and ordered both Plaintiff's return to chronic care status and a liver biopsy. The biopsy confirmed that Plaintiff's condition had deteriorated between the biopsy performed on 10-25-00 and the one done on 3-19-08, with the former showing Grade 1 portal inflammation and 0 Stage pathological fibrosis; and the more recent one showing Grade 3 portal inflammation and 1 Stage pathological fibrosis. Clearly, Plaintiff sustained a measurable injury by being removed from chronic care status. Dr. King's observation in May of 2006 should have alerted the medical personnel at the ADX to return Plaintiff to chronic care status to monitor the disease more carefully, but they failed to do so. The delay caused Plaintiff real and permanent injury to his liver, and defendants United States of America, the BOP, and Nafziger are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference by delaying, denying,

"D. Cause of Action : Claim Eleven " (Page 2)

and withholding treatment for Plaintiff's serious medical needs, resulting in permanent and life-threatening injury. Furthermore, defendants United States of America, the BOP, and Nafziger are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference to Plaintiff's serious medical needs by concocting a policy, practice, custom, and pattern of behavior that produce false "normal" readings of AST and ALT levels in blood-tests by using 5 different laboratories that use 5 different metrics on what constitutes "high", "normal", or "low" readings, which allows the defendants to delay, postpone, deny, and withhold expensive treatments like liver biopsies and interferon/ribaviron injections. The defendants have employed these tactics with Plaintiff for over 20 years. Plaintiff further contends defendants United States of America, the BOP, and Nafziger have knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference to Plaintiff's serious medical needs — and with no penological justification — denied him a low-iron dietary tray, which is standard care for patients suffering from chronic hepatitis C infection. Defendants United States of America, the BOP, Watts, Nalley, Wiley, Collins, Sudlow, and Knox are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously, outrageously, and with deliberate indifference to Plaintiff's serious medical needs by failing in their role in the administrative remedy process to correct the unconstitutional violations being done to Plaintiff. These defendants instead chose to affirm, accede, acquiesce, and approve of their co-workers' actions, and are therefore liable. The defendants have caused Plaintiff to suffer emotional and psychological and physical pain, injuries, and distress with no penological purpose, and the defendants will continue to inflict these injuries on Plaintiff unless the court intercedes. (See: Claim 1 for a list of emotional and psychological injuries with physical manifestations).

12. Claim Twelve: Grievance procedures at the ADX are constitutionally inadequate and violate the 1st and 5th Amendment

The defendants are at all times in Claim 12 of the complaint the United States of America, the BOP, Watts, Nalley, Wiley, Collins, Sudlow, and Knox. For the most part it is defendant Knox's responsibility to pass out and pick up administrative remedies. However, Knox has instituted a practice not authorized by BOP policy, which effectively guarantees in some situations grievances will not — indeed, cannot — be filed in a timely fashion, which results in rejection and PLRA complications in terms of exhaustion requirements. By limiting one issue to each grievance (and one only); and issuing one grievance form at a time (and one only); and refusing to issue a second grievance until the first grievance has been answered and returned to Plaintiff; and refusing to issue more than one grievance a week under any circumstances; and defendants Collins and Sudlow refusing to issue grievances on the 2 days a week that Knox is not working — it makes it a mathematical impossibility to file more than 3 timely grievances within the 20 days mandated by BOP policy. When, as here, Plaintiff had multiple issues to grieve in a 20 day time period, it was impossible to grieve them all in a timely fashion. In addition, these defendants did not start rejecting any of Plaintiff's grievances until it became known he was preparing the instant litigation, which raises a retaliation issue. Defendants United States of America, the BOP, Watts, Nalley, Wiley, Collins, and Sudlow have affirmed, approved, acceded, and acquiesced to Knox's unconstitutional actions via the administrative remedy process. Plaintiff has repeatedly complained about Knox's obstructionistic tactics in administrative remedies and multiple letters to defendants Collins, Cruz, and Wiley. Defendant Knox also sits in judgment on Plaintiff's grievances that are filed against none other than Knox himself, and not surprisingly, Knox repeatedly finds himself innocent of all charges. Plaintiff further alleges grievances are rarely, if ever, investigated by Knox, Sudlow, or anyone else at the ADX; and that contrary to policy, little or no effort is made to resolve problems informally by defendants (as evidenced by the 52 letters Plaintiff

"D. Cause of Action : Claim Twelve " ( Page 2)

wrote to named defendants in this action that went unanswered); that the ADX routinely violates its own rules about grievance procedures, flexibility, extensions of time; and that when grievances are reviewed by defendant Wiley, fully ⅔ of Wiley's responses either flatly ignored the issue being raised; feigned confusion over the issues; misstated the issues; claimed the issue had already been "generally" addressed elsewhere; or took evasiveness to a new low. The same level of disconnect moves further up the bureaucratic food-chain, and Nalley and Watts employ the same tactics in making the grievance procedure a standing joke that nobody laughs at. All of the defendants are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously impeding, delaying, and denying Plaintiff's access to court by imposing a constitutionally inadequate grievance system that is designed and intended to fail. The defendants have inflicted, and continue to inflict, emotional and psychological pain, injury, and distress on Plaintiff — with physical manifestations — by frustrating, stressing, annoying, and exasperating the Plaintiff to the point of clinical depression and thoughts of suicide. There is no penological purpose for defendants' actions, and Plaintiff alleges the constitutional violations will continue unless the court intervenes. ( See: Claim 1 for a list of the emotional and psychological pain, injuries, and distress with physical manifestations ).

13. Claim Thirteen: Defendants refused to mail, or impeded the mailing of, legal letters to the ACLU, legal letters to attorney Taylor Pendergrass of the ACLU, letters to the U.S. Parole Commission (and other "special mail" letters), in violation of the 1st, 5th, and 6th Amendment to the US Constitution.

The defendants are at all times in Claim 13 of the complaint the United States of America, the BOP, Watts, Nalley, Wiley, Cruz, Collins, Sudlow, and Knox, and an unknown mailroom officer at the ADX. The defendants are all being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously violating Plaintiff's 1st and 6th Amendments without due process or penological purpose, by refusing to mail sealed legal letters to the ACLU, to attorney Taylor Pendergrass, or "special mail" letters to the U.S. Parole Commission or other special mail destinations. On 2-7-07 Plaintiff wrote a sealed, properly marked "Legal Letter" addressed to the ACLU in Denver, with sufficient postage attached. It was not addressed to a named attorney at the ACLU because this was the first time Plaintiff had contacted the ACLU and he did not know the names of any attorneys who worked there. On 2-8-07 defendant Knox returned the letter saying a letter addressed to the ACLU did not qualify as legal mail and Plaintiff could not send it out sealed. In June of 2007 Plaintiff gave Knox, on two separate days, two sealed, stamped, properly marked "Legal Letters" addressed to Attorney Taylor Pendergrass, at the ACLU address, which contained irreplaceable exhibits essential to this case that were never received by Pendergrass or anyone else in the ACLU office. In July of 2007 Plaintiff was placed on indigent status, pursuant to the CFR, that allowed him to receive both free medication and postage for legal and special mail purposes. On 7-19-07 Plaintiff gave defendant Knox a sealed, clearly marked "Legal Mail" letter addressed to Taylor Pendergrass, Attorney at Law, Register Number 36008, ACLU, 400 Corona Street, Denver, CO, 80218, and requested that postage be affixed to it pursuant to the CFR and Plaintiff's indigent status, and taken to the ADX mailroom to be mailed. On 7-24-07 defendant Knox returned the letter to Plaintiff with a post-it-note attached saying "Not considered legal. No legal postage provided." For the 8 or 9 months leading up to this Knox's behavior toward Plaintiff had grown increasingly hostile and re-

"D. Cause of Action: Claim Thirteen" (Page 2)

taliatory for the extra paperwork being generated in preparation for this law suit. On 7-30-07 when requesting a form to begin the grievance procedure over the 7-19-07 letter to Pendergrass, Knox told Plaintiff that he had been instructed to return the letter by defendant Collins on the grounds it did not qualify as a legal letter, i.e., entitled to be sent out sealed, because Taylor Pendergrass was not Plaintiff's attorney of record. Plaintiff then informed Knox he would be a defendant in this law suit, and Knox immediately and angrily responded by saying Plaintiff had just been removed from indigent status and would no longer be receiving free legal or special mail postage. On 8-1-07 defendant Sudlow returned 4 special mail letters Plaintiff had given to Knox to mail earlier in the week. These letters were addressed to the Regional Office of the BOP (a Tort Claim), 2 letters to the Central Office of the BOP, and 1 letter to the Regional Director of the BOP. Defendants United States of America, the BOP, Watts, Nalley, Wiley, Cruz, Collins, and Sudlow conspired to conceal Knox's retaliatory actions in refusing to mail letters to the ACLU, Taylor Pendergrass, and assorted other "special mail" letters; and by failing to intervene and stop Plaintiff's removal from indigent status, or to correct Knox's attempts to obstruct Plaintiff's access to courts and counsel; and by approving, acceding, affirming, and acquiescing to Knox's unconstitutional behavior. The predicate acts and omissions can be found in their responses to Plaintiff's administrative remedies where they all trip over each other's lies and contradict each other, or in their failure to respond to Plaintiff's letters asking for their intercession, all of which shows an intent to cover up and lend support to Knox's unconstitutional actions. Because of Knox's actions, Plaintiff was compelled to sell personal belongings, and even food off his trays, to secure enough postage to continue exhausting his administrative remedies throughout August and September of 2007. On 10-19-07 Plaintiff attempted to mail a sealed, properly marked "Special Mail" letter to the U.S. Parole Commission (Plaintiff had been returned to indigent status 16 days earlier), but it was returned to

"D. Cause of Action: Claim Thirteen" (Page 3)

Plaintiff by Knox with a post-it-note attached saying "Not an Attorney, Courts, or administrative remedy — must use social stamps." Knox later claimed the unknown mailroom officer (defendant) wrote the post-it-note. Plaintiff again filed grievances, Knox again sat in judgment of grievances filed against himself, and Knox again exonerated himself of all wrong-doing, which was affirmed by defendants Collins, Wiley, Nalley, Watts, the BOP, and the United States of America. All of the defendants named herein have knowingly, willfully, arbitrarily, and capriciously conspired to violate, and have in fact violated, Plaintiff's 1st, 5th, and 6th Amendments to the US Constitution. They have either retaliated against Plaintiff for vindicating his constitutional rights to petition the courts, or conspired to conceal this retaliatory behavior. They have refused to mail legal letters and special mail letters, and refused to give Plaintiff the free legal and special mail postage he was entitled to (and needed to petition the courts). These defendants have acted and failed to act with no justifiable penological purpose in view, and they have caused Plaintiff emotional and psychological pain, injury, and distress — with physical manifestations — that will continue if the court does not intervene. Defendants Watts, Nalley, Wiley, Cruz, Collins, and Sudlow are each being sued in their official and individual capacities for failure to train, correct, and control the acts and omissions of their underlings: Knox and the Unknown Mailroom Officer. These defendants have instead chosen to affirm, accede, acquiesce, and approve — and conceal — the unconstitutional behavior all around them. (See: Claim 1 for a list of emotional and psychological pain, injury, and distress with physical manifestations).

14. Claim Fourteen    The Immigration and Nationality Act, 8 USC 1481 Section 349(a) is unconstitutional in that it is discriminatory and violates Plaintiff's free speech and freedom of religion, guaranteed by the 1st Amendment.

The defendant, the United States of America, is being sued in its official and individual capacity for knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference, by discriminating against Plaintiff by enforcing a law that on its face is unconstitutional, discriminatory, and violative of Plaintiff's 1st Amendment to express his political discontent, and his sincere religious beliefs. Mathew 25: 31-46 (but especially verse 32) says that "nations" will be judged by how well or poorly they treated the rest of the world. Plaintiff is adamant about not being judged as a citizen of the United States. The desire to renounce his U.S. citizenship is based on Plaintiff's sincere religious beliefs. Plaintiff also wants to renounce his U.S. citizenship as an expression of free speech and deep opposition to this country's foreign policy. Being a convicted felon serving a life term, Plaintiff cannot voice his political discontent at the ballot box. Plaintiff is opposed to, and deeply offended by, the wars and murders and cruelties being done in his name as a U.S. citizen, and he wants to voice his outrage by renouncing his U.S. citizenship. The U.S. State Department informed Plaintiff on 2-26-08 that according to 8 USC 1481, section 349(a) that there were only two ways Plaintiff could renounce his U.S. citizenship: by making a formal renunciation of nationality before a diplomatic or consular officer of the United States while being physically outside the borders of the United States; or when the United States is actually in a state of war, and only then with the Attorney General's approval. Plaintiff appealed to the Attorney General on 3-9-08 again requesting to renounce his U.S. citizenship, on the grounds the U.S. was surely at war with Afghanistan and Iraq. Plaintiff believes, and therefore alleges, 8 USC 1481 section 349(a) blatantly discriminates against U.S. citizens, like Plaintiff, who are being physically and legally barred — both now and in the future — from leaving the United States, where according to this statute, is a prerequisite to renouncing one's citizenship. Plaintiff is serving a life sentence, which means he will in all probability die in prison

"D. Cause of Action: Claim Fourteen" (Page 2)

and be prevented from renouncing his U.S. citizenship — which is a right afforded to all other U.S. citizens — because this statute requires him to leave a country he is legally barred from leaving now or in the future (note: the parole laws won't allow parolees to leave the state, much less the country). So while prisoners are usually not a recognized "suspect class" for discrimination purposes, this is a narrow exception to that rule. First the Plaintiff has been stripped of the right to voice his political discontent by voting, and now he's being stripped of voicing his political discontent in the last meaningful way that is left open to him. Defendant is acting unreasonably, because there is no penological or governmental reason not to let Plaintiff renounce his U.S. citizenship. Defendant is inflicting emotional, psychological, and more importantly, spiritual pain, injury, and distress on Plaintiff with physical manifestations, and will continue to inflict these injuries on Plaintiff unless the court intervenes. (See: Claim 1 for a list of emotional and psychological pain, injuries, and distress with physical manifestations).

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No  (CHECK ONE).  If your answer is "Yes," complete this section of the form.  If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit.  The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1.  Name(s) of defendant(s) in prior lawsuit:

    _Henman_

2.  Docket number and court name:

    _85-3123   7th Circuit_

3.  Claims raised in prior lawsuit:

    _denial of co-defendant correspondence_

4.  Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

    _injunction denied ( 807 F.2d  113)_

5.  If the prior lawsuit was dismissed, when was it dismissed and why?

    _N/A_

6.  Result(s) of any appeal in the prior lawsuit:

    _Affirmed_

## F. ADMINISTRATIVE RELIEF

1.  Is there a formal grievance procedure at the institution in which you are confined?

    ✓ Yes ___ No  (CHECK ONE).

2.  Did you exhaust available administrative remedies? ✓ Yes ___ No (CHECK ONE).

(Rev. 1/30/07)                              7

"E. Previous Law Suits"  (Page 2)

Plaintiff has filed at least one habeas corpus; one 2255; one Tort Claim; and two other civil actions prior to this one. Plaintiff threw away all his legal material approximately 10 years ago, including records of these legal actions, so he cannot provide the names of defendants, docket numbers, or any specifics required by the court. Plaintiff has sustained head injuries and brain damage which has adversely affected his memory, which will appear more fully in the body of this complaint. The only thing the Plaintiff can recall is: Plaintiff's habeas corpus was filed in the Southern District of Illinois, which involved a misconduct report Plaintiff received at the USP Marion, and the petition was granted in part and denied in part; the 2255 was filed in the Middle District of Tennessee, and involved a "no benefit" finding before sentencing Plaintiff to an adult sentence, and petition was granted, and Plaintiff was resentenced; the Tort Claim was filed in the District of Colorado, involving the illegal confiscation and destruction of Plaintiff's authorized personal property, and settled it out of court in Plaintiff's favor for $300⁰⁰; one action was filed in the District of Colorado involving parole guidelines (this may have been a habeas corpus or law suit, Plaintiff cannot recall), and Plaintiff lost it; the law suit was filed in the District of Colorado, involving discrimination, and Plaintiff lost. There may have been other legal actions but Plaintiff cannot remember.

F. Administrative Remedies Exhausted

1. #422673 (transfer to new PC unit) denied

2. #424739 (removal from PC step-down/pre-transfer unit) denied

3. #426994 (housing PC's with GP's) denied

4. #428648 (removal from PC status, housing, programs) denied/rejected

5. #442935 (loss of eligibility for transfer) denied

6. #444265 (no J-Unit reviews) denied

7. #444878 (precluded from J-Unit/presence of 2 AB) denied

8. #445168 (precluded from GP programs) denied

9. #445837 (transfer) denied

10. #446741 (due process/reclassification/PC/no hearing) denied

11. #448125 (unconstitutional conditions doctrine) denied

12. #448747 (GP inmate threats) denied

13. #449969 (GP inmates causing sleep deprivation) denied

14. #449971 (GP inmates threat on rec yard) denied

15. #451377 (retroactive rule-making/APA violation) denied

16. #452244 (policy violations) denied

17. #456678 (no lock-up order) denied

18. #458147 (removal from J-Unit/lies) denied

19. #458361 (staff meeting) denied

20. #457723 (loss of property) denied

21. #460725 (denial/approval J-Unit) rejected

22. #462085 (placement in J-Unit with 10 AB members) denied/rejected

23. #462530 (safety/open doors) denied/rejected

24. #462847 (ACLU letter) denied

25. #463272 (refusal to provide free postage) denied

26. #464956 (medical visits) denied/rejected

27. #464158 (medical care) denied

28. #464353 (medical care/hepatitis C) denied

" F. Administrative Remedies Exhausted " (Page 2)

㉙ # 466836 ( supermax/lock-down ) denied

㉚ # 467435 ( safety/ rat sign ) denied

㉛ # 468404 ( discrimination / unchanging circumstances ) denied

㉜ # 470571 ( due process/ grievance procedures ) denied

㉝ # 470133 ( custody/ classification ) denied

㉞ # 471556 ( grievances/ letters ) denied

㉟ # 472098 ( due process/ custody/ classification ) denied

㊱ # 473923 ( special mail ) denied

㊲ # 473910 ( grievances/ letters ) denied / rejected

㊳ # 474875 ( grievances/ non- responsive ) denied

㊴ # 476043 ( not pursued )

㊵ # 477738 ( safety/ door malfunctions ) denied

㊶ # 478239 ( job/ injury/ medical care ) denied

㊷ # 479256 ( medical care ) denied

㊸ # 479272 ( mandatory parole date ) denied

㊹ # 480200 ( sewage spill ) denied

㊺ # 480572 ( medical records ) denied

㊻ # 481994 ( review file/ parole tapes ) denied

㊼ # 482252 ( medical costs ) denied

㊽ # 489852 ( diet ) denied

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

Declarative judgment entered that defendants violated Plaintiff's 1st, 4th, 5th, 6th, and 8th Amendments to the U.S. Constitution as set forth in Claims 1 through 14 of this, and the original complaint; that defendants violated Title 18 USC 4042, Title 18 USC 4081, Title 5 USC 551, Title 8 USC 1481, Title 29 USC 706, Title 42 USC 12101, Title 42 USC 1917d, Title 29 CFR 1613, Title 29 CFR 1630, Title 28 CFR 540, Title 28 CFR 541, Title 28 CFR 524. Monetary damages in the amount of $60,000.00 for compensatory, punitive, and equitable relief. And injunctive relief as set forth in "Request For Relief" in the original complaint (Points 1 through 62). Finally, Plaintiff requests to be reimbursed by defendants of all costs and expenditures associated with the prosecution of this case, with interest, and any other relief the court deems just and proper under Title 28 USC 2671 and Title 28 USC 1346 of the Federal Tort Claims Act.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on   8-12-08
_____
(Date)

_____
(Prisoner's Original Signature)