Amended Complaint

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.    08- cv - 01258- BNB

(To be supplied by the court)

Randy K. Gometz , Plaintiff,

v.

United States of America ,

Federal Bureau of Prisons ,

Harrell Watts ,

Michael K. Nalley ,

Ron Wiley ,

John T. Shartle ,

Mark A. Munson ,

Maureen S. Cruz , Defendant(s).

(List each named defendant on a separate line.)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

NOV 0 6 2008

GREGORY C. LANGHAM
CLERK

---

## PRISONER COMPLAINT

---

(Rev. 1/30/07)

Defendants (Page 2)

H. Church

M. Collins

T. Gomez

T. Sudlow

___ Fenlon

___ Hagood

___ Clark

G. Knox

___ Manley

A. Osagie

M. Schappaugh

___ Dalglish

S. Nafziger

Unknown Physician's Assistant

___ Cink

Unknown Mailroom Officer

## A. PARTIES

1. Randy K. Gometz, # 35556-118, P.O. Box 8500, Florence, CO
(Plaintiff's name, prisoner identification number, and complete mailing address)
81226 - 8500

2. United States of America, Office of the Attorney General, 1425 New
(Name, title, and address of first defendant)
York Ave., Washington, DC, 20530
At the time the claim(s) alleged in this complaint arose, was this defendant acting under
color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

Federal prisoner, defendants, and case

3. Federal Bureau of Prisons, 320 First St., NW, Washington, DC
(Name, title, and address of second defendant)
20534
At the time the claim(s) alleged in this complaint arose, was this defendant acting under
color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

Federal prisoner, defendants, and case

4. Harrell Watts, Administrator of Inmate Appeals, 320 First St, NW,
(Name, title, and address of third defendant)
Washington, DC, 20534
At the time the claim(s) alleged in this complaint arose, was this defendant acting under
color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

Federal prisoner, defendants, and case

(If you are suing more than three defendants, use extra paper to provide the information
requested above for each additional defendant. The information about additional defendants
should be labeled "A. PARTIES.")

(Rev. 1/30/07)                          2

"A. Parties" (Page 2)

(5) Michael K. Nalley, Regional Director of BOP, Gateway Complex, Tower II, 8th Floor, 400 State Ave., Kansas City, KS, 66101-2492; Not acting under color of state law; Federal prisoner, defendants, and case.

(6) Ron Wiley, Warden at ADX, P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(7) John T. Shartle, Assistant Warden at ADX; address unknown; Not at the ADX anymore; Not acting under color of state law; Federal prisoner, defendants, and case.

(8) Mark A. Munson, Assistant Warden at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(9) Maureen S. Cruz, Assistant Warden at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(10) H. Church, Captain at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(11) M. Collins, Unit Manager at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, case.

(12) T. Gomez, Unit Manager at ADX; Address unknown; No longer working at ADX; Not acting under color of state law; Federal prisoner, defendants, and case.

(13) ___ Fenlon, Caseworker at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(14) T. Sudlow, Caseworker at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(15) ___ Hagood, Counselor at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(16) ___ Clark, Counselor at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(17) G. Knox, Counselor at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting

"A. Parties " ( Page 3)

under color of state law; Federal prisoner, defendants, and case.

(18) ___ Manley, Lieutenant at ADX; P.O. Box 8500, Florence, Co, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(19) A. Osagie, Physician's Assistant at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(20) M. Schappaugh, Physician's Assistant at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(21) ___ Dalglish, Medical Technician at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(22) S. Nafziger, Clinical Director at ADX; Address unknown; No longer working at ADX; Not acting under color of state law; Federal prisoner, defendants, and case.

(23) Unknown Physician's Assistant at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(24) ___ Cink, Physician's Assistant at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

(25) Unknown Mailroom Officer at ADX; P.O. Box 8500, Florence, CO, 81226-8500; Not acting under color of state law; Federal prisoner, defendants, and case.

## B. JURISDICTION

1.   I assert jurisdiction over my civil rights claim(s) pursuant to:  (check one if applicable)

_____   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

✓   28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2.   I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

28 USC 2201; 28 USC 2202; 18 USC 4042; 18 USC 4081; 5 USC 551; 42 USC 1917d; 42 USC 12101; 29 USC 706; 29 CFR 1630; 29 CFR 1613; 28 USC 2671; 28 USC 1346; 28 CFR 540; 28 CFR 541; 28 CFR 524; 8 USC 1481

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case.  If more space is needed to describe the nature of the case, use extra paper to complete this section.  The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

Plaintiff is a federal prisoner at the supermax in Florence, CO ("ADX"), and this is a class-of-one action against the named defendants in both their official and individual capacities for violating his 1st, 4th, 5th, 6th, and 8th Amendments. Plaintiff seeks a jury trial, declarative and injunctive relief, and damages. The issues presented in this case are: (1) Plaintiff's continuous confinement in lock-down conditions for 28 years is cruel and unusual punishment; (2) Plaintiff's confinement in lock-down conditions at the ADX prolongs his confinement by denying him meaningful and equal parole opportunities; (3) Plaintiff's confinement in permanent lock-down, and his retention there, without notice or hearings violates due process; (4) Plaintiff's confinement in lock-down for 28 years, and his treatment while held there, is invidious discrimination and violates due process; (5) Plaintiff's confinement in lock-down for 28 years constitutes an illegal and unreasonable seizure, and violates the 4th Amendment; (6) The elimination of protective custody ("PC") status, housing, and programs at the ADX without notice, hearing, comment, and publication in the Federal Register violates the Administrative Procedure Act ("APA"); (7) Plaintiff's removal from PC status, housing, and programs without notice or hearing violates due process; (8) Plaintiff's placement into general population ("GP") status, housing, and programs endangers his life and mental health; (9) Plaintiff's forced removal from PC status, housing, and programs broke an enforceable contract; (10) Plaintiff continues to be subjected to cruel and unusual punishment, with deliberate indifference to his serious medical needs; (11) Plaintiff has been delayed and denied treatment for his chronic hepatitis C infection with deliberate indifference to his serious medical needs; (12) Grievance procedures are implemented in such a way at the ADX as to deny Plaintiff access to the courts; (13) Plaintiff has been denied the right to correspond with the ACLU and to attorney Taylor Pendergrass; (14) 8 USC 1481, section 349(a) is unconstitutional in that it is discriminatory; denies equal protection of the law, free political and religious speech, religious practice, symbolic speech — because it denies him the right to renounce his U.S. citizenship.

(Rev. 1/30/07)                                        3

# D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1. Claim One: 28 years of confinement in lock-down violates the 8th Amendment

Supporting Facts: ① In October of 1980 Plaintiff was transferred to the USP at Marion, Ill. ("Marion") by defendants United States and the Bureau of Prisons ("BOP"). For the 14 years Plaintiff remained at Marion the prison was on a constant state of lock-down. ② On 11-30-94 defendants United States and the BOP transferred Plaintiff to the ADX, another prison on permanent lock-down, and he has remained at that facility since arriving 14 years ago. ③ As a result of living and exercising on concrete surfaces in lock-down conditions for 28 years, defendants United States, the BOP, Watts, Nalley, and Wiley have caused, and continue to cause, Plaintiff to suffer from numerous, painful, serious, and debilitating injuries which include, but are not limited to: clinical depression; manic/depression; thoughts of suicide; antisocial personality disorder; feelings of humiliation, degradation, and personal indignation; anxiety attacks; sleep disorders ranging from severe insomnia to sleeping 12 to 14 hours a day; malaise; lethargy; fatigue; eating disorders ranging from rapid weight gain to rapid weight loss; inability to concentrate; extreme disorientation; headaches; severe memory loss; degenerative disc and joint disease; chronic and debilitating back pain; herniated disc; back surgery; difficulty and pain in sitting upright, standing, reaching, walking, bending, lifting, and working; cardiovascular deterioration; possible fractured left ankle; tendon and ligament damage to both ankles; ankle pain and instability; possible torn meniscus in both knees; knee pain; tendon and ligament damage to both knees; balance problems; calcium deposits in both shoulders; pain in both shoulders; torn rotator cuff in right shoulder; torn tendon or ligament in right elbow; elbow pain; muscle atrophy; circulatory problems; sciatica; sexual impotence and flaccidity; arthritis in the fingers of both hands; and various symptoms associated with hepatitis C infection, such as measurable liver damage and high levels of AST and ALT in his blood. These injuries have been caused, and/or exacerbated by, these defendants keeping Plaintiff on lock-down for 28 years, where he has been rendered medically and legally disabled from living and exercising on concrete surfaces. ④ Plaintiff's respiratory injuries have been worsened by a severe sewage spill that occurred at the ADX within the last 5 years, which defendants United States, the BOP, Watts, Nalley, and Wiley not only refused, and still refuse, to clean up, but withheld the existence and physical threat this spill caused to inmates, including Plaintiff, at the ADX. ⑤ Defendants United States, the BOP, Watts, Nalley, and Wiley have increased the risk of future medical harm to Plaintiff by reducing him to a sedentary, immobile existence — where obesity, diabetes, heart, liver, or respiratory failures are more likely to occur — because they have denied a physically and mentally disabled inmate the means to access or use the recreation opportunities at the ADX. Moreover, this denial of recreation to Plaintiff by these defendants has resulted in him being confined in total isolation, which itself violates the 8th Amend-

(Rev. 1/30/07)                                    4

"D. Cause of Action: Claim 1" (Page 2)

ment.⑥ By keeping Plaintiff in extreme lock-down conditions for 28 years, defendants United States, the BOP, Watts, Nalley, and Wiley have caused, and are still causing, him to suffer from the emotional, physical, psychological, and spiritual harm — with physical manifestations — as set forth in paragraph three of Claim 1. ⑦ Defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference to Plaintiff's serious medical needs by keeping him confined in cruel and unusual conditions for 28 years, which has resulted in the infliction of wanton and unnecessary pain on him with no penological purpose. ⑧ Defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for failing to correct these unconstitutional conditions when Plaintiff brought them to their attention via administrative remedies.

2.    Claim Two: Confinement at the ADX has the actual effect of turning Plaintiff's parolable sentences into literal life terms, all in violation of the 5th and 8th Amendment.

Supporting Facts: ① All of Plaintiff's sentences fall under the "Old Law", i.e., pre-Comprehensive Crime Control Act, and are therefore parolable. ② The Code of Federal Regulations ("CFR") makes available to all inmates in the BOP, including those at the ADX, awards based on Superior Program Achievement ("SPA") that make inmates eligible for either early parole review or early release. ③ Despite being eligible for a 6-year SPA award Plaintiff was informed on 5-20-98, 5-16-00, and 8-17-04 that an SPA award would not be recommended because the limited programming opportunities at the ADX did not warrant an SPA award. This makes SPA awards discriminatory because as a permanent resident at the ADX Plaintiff is being denied equal protection of the CFR, which has the force and effect of the law. ④ Defendants United States, the BOP, Watts, Nalley, and Wiley have had, and still have, an unwritten rule, policy, custom, and practice in place at the ADX that inmates in Level 6 supermax prisons are rarely, if ever, paroled from those prisons. On 5-17-08 defendant Sudlow told Plaintiff that in the 14 years she has been employed as a caseworker at the ADX — which is a job to prepare all eligible inmates for their parole hearings — she knew of no inmate who was ever paroled from the ADX. Plaintiff would add that in the 28 years he has been confined at Level 6 supermax prisons he knows of no inmate who was ever paroled from Marion or the ADX. Also, a parole examiner flatly told Plaintiff on 5-20-98 that if Plaintiff ever hoped to be paroled one day he would first have to get transferred out of the ADX. Finally, another parole examiner told Plaintiff on 5-16-00, and again on 8-17-04, that he not only felt Plaintiff should never be paroled, but that if he was sitting on the Plaintiff's parole hearing in April of 2011 that this would be his recommendation and vote (thereby rendering Plaintiff's parolable sentences non-parolable, and making a sham out of due process by holding hearings where the outcome is pre-determined. ⑤ Defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference by keeping Plaintiff confined in lock-down conditions for 28 years — in Level 6 supermax prisons — where they know SPA awards and paroles will not be recommended or granted, thereby inflicting extreme emotional, psychological, and spiritual pain, injury, and distress on Plaintiff with the physical manifestations described in Claim 1, without any penological purpose, and which will continue unless the court intervenes. ⑥ Defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for failing to correct these unconstitutional rules, customs, policies, and practices when informed of them by Plaintiff via administrative remedies.

(Rev. 1/30/07)                                        5

3. Claim Three: The failure to provide Plaintiff with a hearing prior to placing or retaining him in prisons on lock-down for 28 years violates both procedural and substantive due process.

Supporting Facts: (1) At no time prior or subsequent to being placed and retained in Marion or the ADX during the last 28 years did defendants United States or the BOP provide Plaintiff with notice or a hearing to allow him the opportunity to contest the assignment of permanent lock-down (2) The decision to continue holding Plaintiff in lock-down at the ADX rests squarely on defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox because no transfer out of the ADX can be obtained without receiving recommendations and approval from each of these defendants (3) By the United States, BOP, and Nalley holding classification proceedings to determine keeping Plaintiff in prisons on permanent lock-down for 28 years, without Plaintiff's input or participation, are weighty affairs that require due process protections and judicial oversight. This is particularly true where, as here, such confinement has discriminatory ramifications on Plaintiff's parole opportunities, and has gone on for nearly 3 decades, and leaves this court with little or no record to review in terms of what, if any, reasoning, discussion, evidence, or justification was used at these secret classification hearings. (4) Plaintiff's ongoing confinement in lock-down conditions for 28 years by defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Clark, Hagood, Gomez, Fenlon, Cruz, Church, Collins, Sudlow, and Knox constitutes an atypical and significant hardship under any baseline, because at no time in the history of the BOP has an inmate — except for Plaintiff — been kept in lock-down conditions for this long for the crime of aiding and abetting. Plaintiff asserts a life, liberty, and property interest in avoiding such further confinement by these defendants because cruel and unusual punishment is being inflicted on Plaintiff without due process of law, and without any penological interest. (5) Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Clark, Collins, Sudlow, and Knox are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously, and with deliberate indifference by confining Plaintiff in lock-down conditions for 28 years without due process, which has resulted in Plaintiff suffering extreme emotional and psychological distress with the physical manifestations outlined in Claim 1. By denying Plaintiff these minimal procedural and substantive due process protections for 28 years the conduct of these defendants should shock both the conscience and evolving standards of the court and society, and it should be clear that the defendants will not stop violating Plaintiff's 5th and 8th Amendment unless the court intervenes. (6) Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously denying Plaintiff the due process mandated in Austin v Wilkinson 545 US 209, 125 S.Ct. 2384, 162 L.Ed. 2d 174 (2005). (7) Defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously failing to correct these unconstitutional conditions when Plaintiff brought them to their attention via administrative remedies.

(Rev. 1/30/07)                                        6

4. Claim Four: Plaintiff's confinement in lock-down for the last 28 years, and the defendant's mistreatment of him during that time span, has been, and continues to be, invidiously discriminatory.

① As a class-of-one Plaintiff has been singled out for invidious discrimination by defendants United States, and the BOP, for aiding and abetting in the murder of a guard in 1983. From 10-22-83 to 11-30-94 these defendants, by and through the guards at Marion, established a pattern of invidious discrimination against Plaintiff until he was transferred. These discriminatory acts include, but are not limited to: (A) Scores of assaults on Plaintiff by the guards; (B) Having urine, spittal, and other debris put in Plaintiff's food by guards; (C) Having Plaintiff's mail routinely thrown away; (D) Plaintiff being verbally abused by guards at every encounter; (E) Plaintiff routinely being woken up and deprived of sleep by guards; (F) Plaintiff having numerous misconduct reports written up on him with false charges by guards; (G) Plaintiff being confined in disciplinary segregation for almost 5 years as a result of those false misconduct reports written by guards; (H) Plaintiff being kept in the control unit for 11 years; (I) Plaintiff having his commissary account "frozen" illegally by Marion officials for 10 years; (J) Plaintiff being savagely attacked and permanently injured by another inmate at the instigation of guards. ② This pattern of invidious discrimination against Plaintiff continued after defendants United States and the BOP transferred him to the ADX on 11-30-94. These discriminatory acts include, but are not limited to: (A) Erasing Plaintiff's approved visiting list on 2 separate occasions, resulting in one visitor who came from Northeastern Canada being turned away at the ADX gate and denied entry; (B) Having Plaintiff's authorized personal property confiscated and destroyed on two occasions; (C) Denying Plaintiff program reviews every 6 months as mandated by the CFR, and officially declaring him ineligible for advancement to the step-down program throughout 1995 and 1996 on the grounds he would never be transferred out of the ADX; (D) Repeatedly attempted to have Plaintiff assaulted and/or killed by DC Blacks, a prison gang who thought Plaintiff was a member of a rival gang with whom they were at war, by giving them physical access to him on 3 occasions in the mid-to-late 1990's;

"D. Cause of Action : Claim 4 " ( Page 2)

(E) Placing Plaintiff in E-Unit on 6-12-01 where he was exposed to new threats of violence, over objections by Plaintiff in a letter addressed to defendant Sudlow in April or May of 2001; (F) Also in 2001, then Assistant Warden Gallegos told Plaintiff that in a conference between Gallegos, Warden Pugh, and Regional Director Hirschberg that Mr. Hirschberg stated categorically that Plaintiff would "never" be transferred out of the ADX because of his 1983 conviction for aiding and abetting in the murder of a guard; (G) That shortly after being recommended to a state prison for safety reasons, on 11-26-05 an unknown officer monitoring Plaintiff's telephone call wrote a false misconduct report alleging he overheard Plaintiff threatening to kill guards, and had Plaintiff placed in the SHU to sabo- tage the prospect of a transfer. Despite defendants' United States, the BOP, Wiley, Gomez, Fenlon, and Clark knowing the charge was false within 10 hours of placing Plaintiff in the SHU (by review of the tape of Plaintiff's phone call) these defend- ants conspired with each other, and defendant Nalley, to keep Plaintiff in the SHU for 68 days ( or until the transfer referral was denied); (H) By defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox individually and collectively playing an ac- tive role in denying programs to Plaintiff that are necessary for paroles and trans- fers out of the ADX that are available to inmates similarly situated; (I) By de- fendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Clark, Collins, Sudlow, and Knox removing Plaintiff from PC status, housing, and programs — and then eliminating PC status, housing, and programs at the ADX in their entirety — and then reclassifying and reassigning him to GP status, housing, and programs involuntarily even though the circumstances and factual basis for placing him in PC remained unchanged; (J) By defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, and Clark imposing disciplinary sanctions against Plaintiff without due

"D. Cause of Action: Claim 4" (Page 3)


process when they removed him from PC status, housing, and programs on 7-25-06 under the guise of an administrative action; (K) By defendants United States, the BOP, Watts, Nalley, Wiley, Munson, Church, and Sudlow misusing BOP Program Statement 5100.8, Chapter 6, Page 11-12 to justify keeping Plaintiff at the ADX in ways this policy expressly forbids: using misconduct reports in custody/classification scores where, as here, they are proscribed from doing so if the inmate has gone more than 10 years without a new misconduct report; (L) Defendants United States, the BOP, Watts, Nalley, Wiley, Gomez, Collins, Sudlow, and Knox improperly elevating Plaintiff's custody from medium to high to prevent a mandatory transfer out of the ADX in 2 years; (M) Defendants United States, the BOP, Nalley, and Wiley not treating Plaintiff as they treated other inmates who debriefed, i.e., transferring him out of the ADX for safety reasons; (N) Defendants United States, the BOP, Watts, Nalley, and Wiley keeping Plaintiff at the ADX despite the fact that in the history of the ADX no inmate, besides Plaintiff, has gone 13 years without a misconduct and not been transferred to another prison; (O) Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Collins, Sudlow, and Knox each playing an integral role in recommending, approving, placing, and affirming Plaintiff's placement in the GP step-down unit on 5-17-07 amidst the very gang members he informed against with the intent to have him assaulted, murdered, or render much of this law suit moot by pressuring him to request removal for his own protection; (P) Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox instituting an unconstitutional conditions doctrine at the ADX wherein Plaintiff had to forfeit his 8th Amendment right to personal safety in order to be eligible for transfer out of lock-down; (Q) Defendants United States, the BOP, and Manley failing to provide Plaintiff with a lock-up order within the 24 hours mandated by the CFR when he was

"D. Cause of Action: Claim 4" (Page 4)

placed in the SHU on 5-21-07; (R) Defendants United States, the BOP, and Gomez falsifying documents to justify Plaintiff's removal from the GP step-down unit on 5-21-07; (S) Defendants United States, the BOP, Collins, and other defendants — to be determined via discovery — having a staff meeting on 5-30-07 wherein they conspired and concocted a false explanation to cover up the improper actions taken against Plaintiff on 5-21-07 when he was improperly removed from the GP step-down unit. (3) All of the defendants named in paragraphs 1 and 2 of Claim 4 are being sued in their official and individual capacities for Knowingly, willfully, arbitrarily, and capriciously discriminating against Plaintiff with malicious and invidious intent — who addresses this court as a class-of-one — for a crime that is 25 years old. These defendants have singled the Plaintiff out, and will continue singling him out, with the intent to inflict extreme emotional and psychological pain, injury, and distress, with the physical manifestations outlined in Claim 1. Further, these defendants have acted, and continue to act, with no penological purpose in view. (4) Defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for failing to stop this invidious discrimination when Plaintiff brought it to their attention via administrative remedies.

5. Claim Five: Plaintiff's confinement in lock-down conditions for 28 years constitutes an illegal and unreasonable "seizure" that violates the 4th Amendment

(1) By keeping Plaintiff in lock-down conditions for the last 28 years, defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox have individually, severally, and collectively violated his 4th Amendment in that the ongoing seizure, although initially legal and reasonable, has long since become unreasonable — and therefore illegal — after such an extended period of confinement in lock-down. These defendants are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously violating Plaintiff's 4th Amendment for the last 28 years without any penological purpose to justify it. These defendants each play an integral role in keeping Plaintiff confined in lock-down at the ADX, and their actions and inactions have inflicted, and will continue to inflict, extreme emotional and psychological pain, injury and distress on Plaintiff with the physical manifestations outlined in Claim 1. This confinement amounts to more than an atypical and significant hardship, and these defendants are soley responsible for Plaintiff's ongoing illegal and unreasonable seizure. Defendants will continue this unconstitutional behavior until the court intervenes.

6. Claim Six: The elimination of PC status, housing, and programs at the ADX without notice, hearing, comment, or publication in the Federal Register constitutes a legislative rule change in violation of the APA.

① On 1-23-01 Plaintiff "debriefed" and informed against 5 prison gangs. After Plaintiff was exposed as an informant to these gangs 18 months later by defendants United States and the BOP, he was admitted to PC status and housing on 8-16-02 because layers of BOP officials found a verified threat against Plaintiff's life that precluded housing in any maximum security prison, including ADX's GP. After remaining in the PC housing unit for 23 months Plaintiff was admitted to the PC step-down/pre-transfer program on 7-8-04, where he remained for the next 2 years. ② On 7-25-06 defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Church, Gomez, Fenlon, and Clark each played an instrumental role — individually, severally, and collectively — in removing Plaintiff from PC status, housing, and programs (or affirmed that action on appeal), as well as reclassifying and reassigning him to GP status, housing, and programs on 7-28-06. These defendants eliminated PC status, housing, and programs at the ADX on 7-28-06 without notice, hearing, comment, or publication in the Federal Register. ③ Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox have a statutory and regulatory duty to provide Plaintiff with PC status, housing, programs, safekeeping, segregation, and CIM separation from the gang members he informed against (See: 18 USC 4042; 18 USC 4081; 28 CFR 541.23(a)(1) through (8); 28 CFR 524.72(f); BOP Program Statement FLM 5321.07; and BOP Program Statement 5321.06). When PC status, housing, and programs were eliminated at the ADX on 7-28-06 that statutory and regulatory mandate was violated. ④ Prior to 7-28-06 every BOP facility in the country made PC status, housing, and programs available to its inmates. After 7-28-06, however, the ADX stands alone as the only prison in the country — state or federal — that does not offer PC status, housing, and programs. The length of time these statutory, regulatory, and policy rules have been in effect gave Plaintiff a reasonable expectation that PC status, housing, and programs would not be suddenly withdrawn without compliance with the requirements of the APA, i.e., notice, hearing, comment, and publication. Defendants United States, the

"D. Cause of Action : Claim 6 " (Page 2)

BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox have violated the 5th and 8th Amendments, and the APA, by removing Plaintiff from PC status, housing, and programs — and then eliminating PC status, housing, and programs at the ADX — and returning him to GP status, housing, and programs without providing notice, hearing, comment, and publication in the Federal Register. (5) By eliminating PC status, housing, and programs at the ADX — particularly the PC step-down/pre-transfer program after Plaintiff had been in it for 2 years — defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox have individually and collectively engaged in retroactive rulemaking, which violates the APA. (6) All of the defendants named in paragraphs 1 through 5 of Claim 6 are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously removing Plaintiff from PC status, housing, and programs — then eliminating those PC status, housing, and programs at the ADX — and reclassifying and reassigning him to GP status, housing, and programs, which inflicted extreme emotional and psychological pain, injury, and distress on Plaintiff with the physical manifestations outlined in Claim 1 without any penological purpose. (7) Defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for failing to stop these violations of the Constitution and APA when brought to their attention by Plaintiff via administrative remedies.

7. Claim Seven: Forcing Plaintiff off PC status, housing, and programs — and then reassigning him to GP status, housing, and programs without affording him notice and a hearing violates his right to due process.

① Despite being admitted to PC status, housing, and programs on 8-16-02 because a bevy of BOP officials found a verified safety threat against Plaintiff's life precluded housing him in GP at the ADX, defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Church, Gomez, Fenlon, Clark, Collins, Sudlow, and Knox reversed that decision on 7-25-06 by removing him from PC status, housing, and programs — and then reassigned and reclassified him to GP — without any notice, hearing, or due process at all on 7-28-06. These defendants returned Plaintiff to the same GP he was removed from 4 years earlier even though none of the circumstances leading to his placement in PC had changed. These defendants, individually and severally, play a collaborating role in Plaintiff's classification and housing assignments on a national, regional, and local level; and they each played an instrumental role in removing Plaintiff from PC status, housing, and programs at the ADX, as well as reclassifying and reassigning him to GP. ② Plaintiff invokes a life, liberty, and property interest in not being removed from PC status, housing, and programs by virtue of 18 USC 4042 and 18 USC 4081, which requires defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Church, Gomez, Fenlon, Clark, Collins, Sudlow, and Knox to provide for his safekeeping, protection, and segregation. Plaintiff also invokes a life, liberty, and property interest in not being removed from PC status, housing, and programs by virtue of 28 CFR 541.23 (a)(1) through(8), and 28 CFR 524.72, which mandates the provision of PC status and housing in all BOP facilities, and the provision of CIM separation from inmates who wish to cause Plaintiff harm. Plaintiff invokes a life, liberty, and property interest in not being removed from PC status, housing, and programs by virtue of 5 USC 553, which requires notice, hearing, comment, and publication in the Federal Register before these defendants can make legislative rule changes and apply new rules retroactively — like the elimination and removal of PC status, housing, and programs while Plaintiff is still in them — all of which violates the APA. Plaintiff asserts a life, liberty, and property interest in not being removed

"D, Cause of Action: Claim 7" (Page 2)

from PC status, housing, and programs by these defendants without due process, because there can be no legitimate penological interest in returning a known and documented informant to the same GP he was removed from for safety concerns, and particularly where, as here, the circumstances leading to his placement in PC remain unchanged. (3) By reclassifying and returning Plaintiff to GP on 7-28-06 defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Church, Gomez, Fenlon, Clark, Collins, Sudlow, and Knox have each played a collaborative role on either the national, regional, or local level in doing the following: (A) failed in their statutory and regulatory duty to provide Plaintiff with safe housing and protection; (B) violated their own rules; (C) made legislative rule changes to the CFR without notice, hearing, comment, and publication in the Federal Register; (D) abused their discretion; (E) engaged in retroactive rule-making; (F) acted arbitrarily and capriciously by denying Plaintiff due process; (G) acted contrary to the law; (H) endangered Plaintiff's life and mental health; (I) exceeded their statutory authority; (J) discriminated against Plaintiff; (K) worked substantive rule changes into existing policies; (L) made dangerous departures from past BOP policies, practices, customs, and interpretations of their statutory and regulatory duties; (M) changed the legal landscape at the ADX; (N) failed to examine or articulate a rational connection between the facts of Plaintiff's case and their action in removing him from PC, or the elimination of PC at the ADX, or the possible consequences of either; (O) failed to take the requisite "hard look" at the consequences of their actions; (P) failed to cite any rational penological purpose in removing Plaintiff from PC status, housing, and programs — or for the elimination of PC status, housing, and programs at the ADX — or to take these actions without affording Plaintiff any due process; (Q) failed to cite any substantial evidence in their decision to remove Plaintiff from PC, to eliminate PC at the ADX, or to return him to GP; (R) applied disciplinary sanctions under the guise of calling them administrative actions by removing Plaintiff from the PC step-down/pre-transfer program; (S) advanced no prin-

"D. Cause of Action - Claim 7" (Page 3)

cipled reason for changing PC policy and reclassifying and returning Plaintiff to GP; (T) denied Plaintiff the opportunity to present probative evidence or argue against returning Plaintiff to GP; and (u) left the court with little or no record to review, because most of defendants' actions were done in secrecy, behind closed doors, without documentation, and without Plaintiff's participation. (4) Plaintiff asserts a liberty interest in not having disciplinary sanctions imposed on him by defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Church, Gomez, Fenlon, Clark, Collins, Sudlow, and Knox under the guise of calling them a "mission change". All of these defendants were directly involved in Plaintiff's removal from the PC step-down/pre-transfer program, placing him in the SHU even though he had committed no infraction, reassigning him to GP on 7-28-06, or affirming these actions on appeal. According to 28 CFR 541.13 (g) through (j), loss of privileges, housing changes, removal from programs, and loss of job are listed as disciplinary sanctions that are entitled to <u>Wolff</u> protections. When defendants removed Plaintiff from the PC step-down/pre-transfer program on 7-25-06 these four disciplinary sanctions were imposed on him without notice, hearing, or any kind of due process at all. (5) Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Church, Gomez, Fenlon, Clark, Collins, Sudlow, and Knox are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously violating the APA and Plaintiff's 5th Amendment right to due process — and will continue to violate them — which has inflicted extreme emotional and psychological pain, injury, and distress on him with the physical manifestations set forth in Claim 1, without any penological purpose. (6) Defendants United States, the BOP, Watts, Nalley, and Wiley are also being sued in their official and individual capacities for failing to stop these unconstitutional practices when Plaintiff brought it to their attention via administrative remedies.

8. Claim Eight: The removal of Plaintiff from PC status, housing, and programs, and then the elimination of PC status, housing, and programs at the ADX — and then forcing him into GP status, housing, and programs — violates the 8th Amendment.

① When Plaintiff was removed from PC status, housing, and programs on 7-25-06, and returned to GP status, housing, and programs on 7-28-06 (when PC status, housing, and programs were discontinued at the ADX), defendants United States, the BOP, Watts, Nalley, and Wiley instituted an unconstitutional conditions doctrine at the ADX — which was put into action by defendants Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox — by requiring Plaintiff, a known informant, to forfeit his 8th Amendment right to personal safety just to reobtain the governmental benefit he once enjoyed in safety, i.e., placement in the step-down/pre-transfer unit. By defendants forcing Plaintiff to go through the GP step-down unit in order to be eligible for transfer out of lock-down, where he will be compelled to be around the gang members he informed against (as well as the BOP's most violent, dangerous, and escape-savy inmates), just to reobtain the governmental benefit that he once enjoyed in safety, is surely an unconstitutional conditions doctrine.② By forcibly mixing known informants like Plaintiff with the BOP's most dangerous men, defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox are violating both the 8th Amendment and every rule of penology and common sense. It is neither safe nor standard prison procedure for this kind of "baiting" to occur, but it is especially inappropriate for places like the ADX. By housing Plaintiff around GP inmates, these defendants have endangered his life and mental health by: (A) the control room officer in D-Unit, Plaintiff's unit, opening the wrong door in May of 2007 that gave an unrestrained inmate physical access to a known informant with his hands cuffed behind his back as he was being escorted past the open door; (B) the control room officer in D-Unit, Plaintiff's unit, experiencing a malfunction during an electrical storm on 6-26-07 where 3 cell doors on Plaintiff's tier mysteriously opened and could not be closed for 2 hours; and (c) the control room officer in D-Unit, Plaintiff's unit, losing control of all doors in the cell-block on 12-6-07 which went uncorrected for several hours. These defendants, individually and

"D. Cause of Action: Claim 8" (Page 2)

severally, have been involved in this "baiting" process, because they each played, and still play, an instrumental role in housing Plaintiff, a known informant, around the BOP's most assaultive and escape-savy inmates. ③ By confining Plaintiff with GP inmates at the ADX, defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox have inflicted extreme emotional and psychological pain, injury, and distress on him with the same physical manifestations outlined in Claim 1, because aside from the fear and real threat of being accidentally or intentionally exposed to inmates who will surely attack him, it has also resulted in : (A) being psychologically traumatized by being routinely and constantly cursed out and threatened; (B) sleep deprivation; and (c) having an inmate hang a "RAT!" sign in his window while Plaintiff was on the recreation yard, and then fingering the Plaintiff as the informant to all the other inmates on the recreation yard. As this last example illustrates, the defendants are actually aiding and abetting in the physical identification of informants to GP inmates. Considering how Plaintiff is required to go through the GP step-down unit if he ever wants out of lock-down — where he is sure to encounter the inmates who either wrote or saw the "RAT!" identification process, this is especially ominous ④ Further evidence of deliberate indifference by defendants United States, the BOP, Watts, Nalley, Wiley, Collins, Sudlow, and Knox can be found in their continuing to house Plaintiff, a known informant, with both regular GP inmates and the gang members he informed against, even after he alerted them to security holes in every housing unit that could give physical access to their targets of assault. Rather than correct these security holes, however, the defendants have done nothing. ⑤ By placing Plaintiff in GP the defendants United States, the BOP, Watts, Nalley, and Wiley have also violated the 8th Amendment because even the guards' own union — AFGE, Local 1302 — say the ADX poses unsafe working conditions due to dramatic staff cuts between 7-27-07 and 9-1-07. ⑥ Defendants United States, the BOP, Watts, Nalley, Wiley, Munson, Cruz, Church, Collins, Sudlow, Knox, Gomez, Fenlon, and Hagood violated Plaintiff's 8th

"D. Cause of Action: Claim 8" (Page 3)

and 5th Amendments by subjecting him to cruel and unusual punishment with deliberate indifference to his safety needs without due process of law. Each of these defendants played an indispensible role in attempting to have Plaintiff assaulted or killed by reviewing, recommending, approving, and placing him in the GP step-down unit on 5-17-07, or affirming it on appeal, even though defendants knew Plaintiff would be housed in an open cell-block with the BOP's most dangerous inmates — as well as around the very gang members he informed against — and be compelled to give these assaultive inmates physical access to him several times a day. The defendants' motivation for this was three-fold: to have Plaintiff attacked in retaliation for his role in the murder of a guard in 1983; to have Plaintiff attacked and silenced in retaliation for filing the administrative remedies necessary to file this law suit; and to cause Plaintiff extreme emotional and psychological terror as he waited for 3 days and nights to be murdered. (7) Plaintiff alleges a conspiracy between defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Clark, Hagood, Collins, Sudlow, and Knox to expose Plaintiff to unnecessary and unreasonable danger by dangling him as "bait" in the GP step-down unit. These defendants played an essential role in the decision to remove Plaintiff from PC status, housing, and programs on 7-25-06, even though they knew the same verified safety threat to Plaintiff's life existed that led to his placement in PC 4 years earlier, and that none of the circumstances had changed. This conspiracy culminated in the defendants' individual and collective collaboration in reviewing, recommending, approving, and placing Plaintiff in the GP step-down unit on 5-17-07, or affirming it on appeal, despite their knowledge he would be surrounded by the BOP's most dangerous inmates, and the very gang members he informed against. The predicate acts of this conspiracy are: (A) Despite defendant Wiley denying the recommendations to place Plaintiff in the GP step-down unit in February of 2007, and saying Plaintiff would not be eligible for review again until August of 2007, defendants Collins, Sudlow, and Knox continued reviewing and recommending Plaintiff for

"D. Cause of Action: Claim 8" (Page 4)

advancement to the GP step-down unit every 3 or 4 weeks; (B) Despite being ineligible for review until August of 2007, defendants Collins, Sudlow, and Knox reviewed and recommended Plaintiff for placement in the GP step-down unit again in April of 2007. Defendants Munson and Cruz denied this recommendation on 5-2-07 because they felt his placement in the GP step-down unit would jeopardize the security of the institution. Once again, Plaintiff received a Notice of Action saying he would not be eligible for review again until November of 2007; (C) Despite being ineligible for review until November of 2007, defendants Collins, Sudlow, and Knox again reviewed and recommended Plaintiff for advancement to the GP step-down unit just a few days after defendants Munson and Cruz denied their previous recommendation on 5-2-07. This time, however, defendants Munson, Cruz, Church, Gomez, Fenlon, and Hagood joined in the recommendation, which was approved by defendant Wiley on 5-17-07, and affirmed by defendants United States, the BOP, Watts, and Nalley on appeal. Again, this occurred within 15 days of Munson and Cruz's previous denial on 5-2-07 — based on their belief Plaintiff's presence there would jeopardize the security of the prison — and Plaintiff's ineligibility for further review until November of 2007, and was done without notice, hearing, warning, or Plaintiff's participation in the decision; (D) Although defendant Collins told Plaintiff that the reason he was denied advancement to the GP step-down unit in February of 2007 was because of the presence of 2 AB members in that unit made it unsafe to house Plaintiff there — a fact that was undisputed by defendants Wiley, Nalley, Watts, the BOP, and the United States in Plaintiff's administrative remedies — these same defendants, now joined by Munson, Cruz, Church, Gomez, Fenlon, Hagood, Sudlow, and Knox all played a vital role in the process of reviewing, recommending, approving, placing, and affirming on appeal Plaintiff's advancement to the GP-step-down unit on 5-17-07 even though these defendants knew the number of AB members and associates had increased from

"D. Cause of Action: Claim 8" (Page 5)

2 to 10 in the interim three months; (E) Despite knowing the AB had an open contract on Plaintiff's life for informing on them in 2001, defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Collins, Sudlow, and Knox intentionally put him around the very gang members he informed against; (F) Despite the regulatory and statutory duty of defendants to keep Plaintiff separated from the AB, Mexican Mafia, and their associates, defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Collins, Sudlow, and Knox each played a decisive and necessary role in the act of hanging Plaintiff out as "bait" in both GP and the GP step-down unit as terror tactics; (G) Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, and Hagood knew the number of AB members and associates in the GP step-down unit had quintupled in the 3 months prior to placing Plaintiff in there, because it was these defendants — individually, severally, and collectively — who were responsible for approving and placing those gang members in the unit; (H) Defendants United States, the BOP, Watts, Nalley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Collins, Sudlow, and Knox knew before placing Plaintiff in the GP step-down unit that they were putting a known informant around the BOP's most dangerous inmates wherein Plaintiff would be compelled to give them physical access to himself several times a day; (I) Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Collins, Sudlow, and Knox knew that by placing a known informant like Plaintiff in physical contact with the BOP's most dangerous inmates in the GP step-down unit — who would be under pressure from the gang members Plaintiff informed against to attack him — that the culture of the ADX could have ended in no other way than Plaintiff being attacked; (J) Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Collins, Sudlow, and Knox put Plaintiff in the GP step-down unit with full knowledge of the AB and Mexican Mafia's long history of having, acquiring, and using hacksaw

"D. Cause of Action: Claim 8" (Page 6)

blades to gain access to their enemies, to cut out knives, and to pressure and arm other inmates to commit acts of violence on their behalf. (8) Considering the numerous letters and administrative remedies Plaintiff sent to defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Cruz, Munson, Church, Gomez, Collins, Sudlow, and Knox wherein he objected to being removed from PC, and objected to the elimination of PC at the ADX, and objected to being housed in GP for safety reasons — only to see the defendants put the Plaintiff in the GP step-down unit on 5-17-07 around the most dangerous inmates in the BOP (as well as around the very gang members he informed on) — it is hard to imagine how a jury will not see this for the blatant attempted murder that it was. (9) In an attempt to prevent defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Collins, Sudlow, and Knox from sending another ex-PC/known informant to the GP step-down unit for slaughter, Plaintiff wrote the FBI on 8-26-07 asking for an investigation and indictment against some of the defendants named herein. Plaintiff's mother and brother likewise sent letters to the FBI on 9-20-07 asking for an investigation and indictment, but unfortunately the FBI's lack of action resulted in another ex-PC/WITSEC inmate (Kinsey Lewis) being sent to the GP step-down unit in February of 2008, where he was immediately stabbed. (10) Incredibly, defendants United States, the BOP, Watts, Nalley, Wiley, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Collins, Sudlow, and Knox are still reviewing Plaintiff for placement in the GP step-down unit — without his participation — which leaves him in a constant state of terror at being used as "bait" again. (11) Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Munson, Cruz, Church, Gomez, Fenlon, Hagood, Collins, Sudlow, and Knox are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously conspiring to subject, and in fact subjecting Plaintiff to cruel and unusual punishment with deliberate indifference to his physical safety and mental health with no penological purpose. These defendants have inflicted, and will continue to inflict, extreme emotional and psycho-

"D. Cause of Action: Claim 8" (Page 7)

logical pain, injury, and distress on Plaintiff with the physical manifestations outlined in Claim 1, without any due process of law. (12) Defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for failing to stop these unconstitutional conditions when Plaintiff brought them to their attention via administrative remedies.

"D. Cause of Action: Claim 8" (Page 7)

9. Claim Nine: Removing Plaintiff from PC status, housing, and programs, and then returning him to GP, constitutes a breech of contract

① When defendants United States and the BOP offered Plaintiff PC on 8-6-02 because they believed his life was in danger in GP when it became known that he had informed against several prison gangs — and then Plaintiff accepted that offer and was placed in PC on 8-16-02 — this constitutes a contract and mutual understanding between defendants and Plaintiff that the PC would continue to be provided ② Prior to being admitted in the PC step-down unit on 7-8-04 Plaintiff was required to sign a contract wherein he agreed to abide by the 37 points of behavior listed therein to remain in the PC step-down/pre-transfer unit by defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Church, Gomez, Fenlon, Clark, Collins, Sudlow, and Knox. These defendants were aware of this contract before removing Plaintiff from the PC step-down unit on 7-25-06 because it is a part of BOP Program Statement FLM 5321.07, "Attachment 5". According to the words of the contract, which were chosen by defendants themselves, there were only two authorized reasons to remove Plaintiff involuntarily from the PC step-down program: being found guilty of a misconduct report, or demonstrating an inability to continue in the program. This latter point was commonly understood to mean behavior that did not warrant a misconduct report, but was nevertheless inappropriate (i.e, poor attitude, poor work habits, poor sanitation, failure to complete obligatory educational programs, etc). Plaintiff, however, was officially removed for a third and unauthorized reason — "mission change" — and constitutes a breech of contract. ② Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Church, Gomez, Fenlon, Clark, Collins, Sudlow, and Knox have individually and severally played an active role in breeching both contracts: by removing Plaintiff from the PC step-down unit on 7-25-06 even though he had faithfully fulfilled his part of the contract by complying with the 37 points for 2 years — and by withdrawing and eliminating the PC status, housing, and programs offered and accepted on 8-6-02 and 8-16-02, respectively, before returning him to GP on 7-28-06. ③ Defendants United States, the BOP, Watts, Nalley, Wiley, Shartle, Church, Gomez, Fenlon, Clark, Collins, Sudlow, and

"D. Cause of Action: Claim 9 " (Page 2)

Knox are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously violating Plaintiff's 5th Amendment by breeching a lawful and enforceable contract when they removed him from the PC step-down unit on 7-25-06, and again on 7-28-06 when they eliminated PC status, housing, and programs at the ADX and returned Plaintiff to GP. These defendants have inflicted, and will continue to inflict, extreme emotional and psychological pain, injury, and distress on Plaintiff with the physical manifestations outlined in Claim 1, without any penological purpose. (4) Defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for failing to correct and retrain their subordinates when these unconstitutional actions were brought to their attention by Plaintiff via administrative remedies.

10. Claim Ten: Plaintiff continues to be subjected to cruel and unusual punishment with deliberate indifference to his serious medical needs in violation of the 8th Amendment.

(1) For close to 20 years defendants United States and the BOP have denied, delayed, withheld, and went to great lengths to conceal the true nature of Plaintiff's back condition so as to avoid treating it, which caused him to suffer wanton and unnecessary pain. Plaintiff has suffered from chronic back pain since 12-19-88, and these two defendants — by and through the medical personnel at Marion — denied Plaintiff this treatment in retaliation for his participation in the murder of a guard at that facility, and ordered procedures and tests designed to conceal the true nature of his back condition for over 6 years. (2) The symptoms Plaintiff displayed from the very beginning were sciatica-related pain that should have been obvious even to a layman. Rather than do the obvious and order an MRI, defendants United States and the BOP — by and through the medical personnel at Marion — only continued to order and reorder x-rays, which only served to conceal Plaintiff's degenerative disc disease. (3) When Plaintiff was transferred to the ADX on 11-30-94 defendants United States and the BOP — by and through the medical personnel at the ADX — did not have an MRI done on Plaintiff's back until 9-22-97, or fully 9-years after making the original complaint. During that time span Plaintiff's medical record contains no less than 20 entries concerning complaints of back pain — with probably 3 times that many complaints going unrecorded — and despite the fact that 2 examiners noted the possibility of sciatica or degenerative joint disease, nothing was done for 9 years (4) Defendants United States, the BOP, and Nafziger are being sued for failing to train and correct medical staff at the ADX in the treatment and management of severe pain-producing ailments. This failure is evidenced by defendant Unknown Physician's Assistant's refusal to come examine, treat, or refer Plaintiff to a specialist for chronic back pain on 8-10-07; and defendant Schappaugh's written declaration that although they were aware of Plaintiff's longstanding back problems, Plaintiff's kind of pain was not considered a medical emergency; and defendant Osagie's written admissions of refusing to log many of Plaintiff's back complaints in his medical file. (5) Defendants United States, the BOP, and Nafziger are also being

"D. Cause of Action: Claim 10" (Page 2)

sued for refusing to provide Plaintiff with medications and treatments prescribed "indefinately" by 2 doctors in March of 2001. (6) After receiving a laminectomy and disectomy on 3-24-01, or over 12 years after making his first complaint of back pain, Plaintiff was given a Medical Disability Slip ("MDS") that permanently proscribed him from doing work that required him to lift more than 25 lbs. In September of 2007 defendant Knox assigned Plaintiff a job he knew Plaintiff was medically incapable of performing in retaliation for being informed that Plaintiff would be naming him as a defendant in a law suit, which resulted in Plaintiff sustaining a serious, painful, and perhaps permanent injury to his back on 12-11-07. (7) As a result of this injury sustained on 12-11-07, Plaintiff was left sprawled in the snow, wet and shivering, for over 20 minutes before defendant Cink deigned to respond to the emergency call. Despite being totally incapacitated by the injury, defendant Cink had Plaintiff carried back to his cell rather than admitting him to the prison infirmary, which resulted in the painful and degrading necessity of Plaintiff having to crawl for his food trays, water, use of the toilet, and other life necessities for 8 full days. (8) After taking one of the prescribed medications for back pain on 12-14-07, Plaintiff experienced symptoms of a heart attack, hit the medical duress button, and collapsed on his bed in pain. Defendants United States, the BOP, and Osagie failed to respond to a possible heart attack victim for over 20 minutes even though Osagie was less than 100 yards away — and then insisted that Plaintiff, a possible heart attack victim, get out of bed and crawl to the bars if he wanted to be examined or treated. After arguing about the wisdom of such a demand for another 10 minutes, Plaintiff finally attempted to comply, only to collapse with an explosive pain erupting in his brain. Eventually, 3 other staff members entered Plaintiff's cell with defendant Osagie, placed him in restraints, and then attempted — without success — to get an EKG reading. Strangely, and without any evidence that Plaintiff had not suffered a heart attack and/or brain aneurysm from being forced to crawl, defendant Osagie opined that Plaintiff probably had "an anxiety attack", and then left the cell. (9) Defendants United States, the BOP, and Nafziger failed to correct or retrain Osagie

"D. Cause of Action: Claim 10" (Page 3)

for his delay and improper treatment of Plaintiff when it was brought to their attention via administrative remedy. (10) On 12-15-07 Plaintiff again took one of his prescription medications for back pain wherein he again experienced symptoms of a heart attack, hit the duress button, and layed down on the floor by the bars to await treatment. After 25 minutes defendant Dalglish arrived — again, after traveling less than 100 yards — and upon being told that Plaintiff would be unable to walk downstairs to the examination room, Dalglish said she would have to contact her superior to see if additional staff could be found to carry Plaintiff downstairs. Dalglish returned 45 minutes later, finding Plaintiff convulsing in pain and lying in a puddle of urine. Dalglish said she was unable to secure enough staff to carry Plaintiff downstairs, so after placing him in restraints through the bars, she entered the cell with 2 guards, took an EKG reading, and had Plaintiff lifted into his bed — still soaked in urine — before leaving him in that condition. (11) Defendants United States, the BOP, and Wiley have failed to keep enough staff on hand to respond to Plaintiff's medical emergencies. (12) Defendants United States, the BOP, and Nafziger failed to correct or properly train Defendant Dalglish for failing to respond to a possibly life-threatening heart attack call for over 65 minutes. These defendants also failed to correct or train Dalglish on standard hospital and hygiene care, because it violates every protocol of medicine and decency to leave Plaintiff wallowing in urine-soaked clothes and bedding. (13) Defendants United States, the BOP, and Nafziger failed to order standard diagnostic tests such as an MRI or CAT scan when notified of the 2 incidents on 12-14-07 and 12-15-07, where Plaintiff experienced explosive pains within his brain and catastrophic memory loss, for which he has still not recovered (14) At all times in Claim 10 of this complaint, defendants United States, the BOP, Watts, Nalley, Wiley, Nafziger, Osagie, Cink, Schappaugh, Dalglish, and the Unknown Physician's Assistant are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, capriciously, unreasonably, outrageously, and with deliberate indifference to

"D. Cause of Action: Claim 10" (Page 4)


Plaintiff's serious medical needs, violating his 8th Amendment through both their action and inaction, resulting in the wanton and unnecessary infliction of pain. These defendants have also needlessly inflicted extreme emotional, psychological, and spiritual pain, injury, and distress on Plaintiff with the physical manifestations outlined in Claim 1, without any penological purpose. Further, Plaintiff alleges these unconstitutional conditions will continue unless the court intervenes. (15) At all times in Claim 10 of this complaint, defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for failing to correct and train the defendants named herein when their unconstitutional actions and omissions were brought to their attention via Plaintiff's administrative remedies.

11. Claim Eleven: Delay and denial of treatment to Plaintiff's hepatitis C infection, resulting in damage to his liver, violates the 8th Amendment.

(1) After testing positive for hepatitis C in the mid-1980's and being placed on chronic care status for the next 18 or 19 years, which mandated twice-annual blood tests to monitor AST and ALT levels, Plaintiff was removed from chronic care status by defendants United States and the BOP — through medical personnel at the ADX — in April of 2003 for no other reason than to reduce lab costs nationally for the BOP by 50 percent [note: inmates not on chronic care status are only entitled to one blood test a year rather than two]. Plaintiff objected to this action both verbally and in writing to no effect, and he remained off chronic care for the next 40 months (2) During gallbladder surgery in May of 2005 an outside surgeon, Dr. King, put in his report that Plaintiff's liver appeared cirrhotic. Despite the attempt to delay and deny Plaintiff access to this report for over a year, when it finally came into Plaintiff's possession in July of 2007 he quoted Dr. King's report in renewing the request to be returned to chronic care status and receive a second liver biopsy. Although defendant Nafziger acquiesced to Plaintiff's request, the fact remains that defendants United States, the BOP, and Nafziger tried to withhold and conceal Dr. King's report (Plaintiff eventually had to file an FOIA request to get it) — and failed to respond to Dr. King's observation that Plaintiff's liver appeared cirrhotic for over 2 years — and only decided to act at all when Plaintiff quoted Dr. King's report and demanded action. This constitutes deliberate indifference to Plaintiff's serious medical needs (3) When Plaintiff was finally given a liver biopsy on 3-19-08 it showed his liver had suffered a significant and measurable deterioration and injury since his first biopsy on 10-25-00. The earlier biopsy showed minimal damage to his liver: Grade "1" portal inflammation, and Stage "0" pathological fibrosis. The recent biopsy showed significant deterioration: Grade "3" portal inflammation, and Stage "1" pathological fibrosis. Clearly then, when defendants United States, the BOP, and Nafziger removed and kept Plaintiff off chronic care status for 40 months, he sustained a measurable injury to his liver. Dr. King's report should have alerted these defendants of the need to return Plaintiff to chronic care status in May of 2005, but having failed to do so, Plaintiff has sustained permanent and possibly life-threatening injury to his liver. (4) By denying Plaintiff a biopsy for over

"D. Cause of Action: Claim II" (Page 2)

7½ years, defendants United States, the BOP, and Nafziger have violated the BOP's own medical protocols for treating hepatitis C infection. ⑤ Defendants United States, the BOP, and Nafziger have created and put into effect a practice and policy that generates false "normal" readings of AST and ALT levels in the blood tests to monitor hepatitis C by using 5 different labs, with 5 different measurements, as to what constitutes high, low, or normal readings of AST and ALT levels. This variance allows defendants to delay and deny expensive procedures like liver biopsies and interferon/ribavarin injections, which is precisely what the defendants have done in Plaintiff's case. ⑥ Defendants United States, the BOP, and Nafziger have also failed to provide preventative health care to Plaintiff by refusing to put him on a low-iron dietary tray, which is standard medical care for someone with Plaintiff's age, length of hepatitis C infection, elevated AST and ALT levels, and genotype ⑦ Defendants United States, the BOP, and Nafziger are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, unreasonably, capriciously, outrageously, and with deliberate indifference to Plaintiff's serious medical needs by violating his 8th Amendment in the delay, denial, and mistreatment of his chronic hepatitis C infection, resulting in the infliction of extreme emotional and psychological pain, injury, and distress — as outlined in Claim 1 — without any penological purpose. ⑧ Defendants United States, the BOP, Watts, Nalley, and Wiley are being sued in their official and individual capacities for failing to correct or train the defendants named herein for their unconstitutional treatment of Plaintiff when it was brought to their attention via administrative remedies.

12. **Claim Twelve:** Grievance procedures at the ADX are constitutionally inadequate and implemented in a way designed to deny Plaintiff access to the courts, thereby violating the 1st and 5th Amendments.

(1) There are 4 steps in the administrative remedy process: a BP-8, which is answered by either defendant Collins, Sudlow, or Knox; a BP-9, which is answered by defendant Wiley; a BP-10, which is answered by defendant Nalley; and a BP-11, which is answered by defendant Watts. For the most part, it is defendant Knox who issues the next grievance forms after a denial. (2) Defendants United States, the BOP, and Knox have instituted a practice at the ADX, which has been affirmed and approved by defendants Watts, Nalley, Wiley, Collins, and Sudlow, that not only guarantees that in some situations, as here, grievances cannot be filed in a timely fashion — thereby creating PLRA complications — by are beyond the scope authorized by BOP Program Statement 1330.13. These defendants have (A) limited Plaintiff to grieving only one issue per complaint; (B) limited Plaintiff to receiving only one administrative remedy at a time; (C) refused to issue a second BP-8 to Plaintiff even when, as here, it took defendants as long as 2 weeks to answer and return the preceeding BP-8; (D) refused to issue Plaintiff more than one BP-8 per week under any circumstances; and (E) refused to provide Plaintiff with a BP-8 on the days Knox is not working. (3) According to BOP Program Statement 1330.13 Plaintiff only has 20 days to submit a BP-8 from the time the incident took place. With the facts of 2(A) through (E) not in dispute, the court can plainly see it is a mathematical impossibility for Plaintiff to file more than 3 timely grievances within the 20 days mandated by policy. This has resulted in Plaintiff having several grievances rejected on timeliness grounds, even though Program Statement 1330.13 gives the defendants the authority to accept slightly tardy submissions when there are valid reasons for delay, or when the grievance alleges staff misconduct. At the ADX, these defendants have never granted additional time to anyone. Ever. (4) Defendant Knox has on several occasions sat in judgment and answered grievances filed against himself by Plaintiff, thereby violating due process. (5) Defendants United States, the BOP, Watts, Nalley, Wiley, Collins, Sudlow, and Knox have violated the 5th Amendment and CFR by failing to investigate or try to resolve complaints informally. This is evidenced by more than 52 letters Plaintiff sent to these defendants that went unanswered, and the 200-plus grievances that were summarily denied. Fully 2/3

"D. Cause of Action: Claim 12" (Page 2)

of defendant Wiley's 50-plus responses to Plaintiff's BP-9's either ignored the issue, talked about issues not being raised, plead confusion, misstated the facts, claimed the issue had already been "generally" answered elsewhere, refused to respond at all, or took evasiveness to a new low. Variations of these tactics were adopted in the 100-plus responses from defendants Watts and Nalley. ⑥ Defendants United States, the BOP, Watts, Nalley, Wiley, Collins, Sudlow, and Knox are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously conspiring to violate Plaintiff's right to petition the courts without due process, by creating and implementing a grievance system at the ADX designed to lead to failure on timeliness grounds. The predicate acts of this conspiracy can be found in the fact that prior to informing defendants of the approaching and now present litigation none of the first 80 grievances he filed were rejected for contrived technicalities. Immediately after informing them of the pending litigation, however, 9 grievances in succession were rejected, and 21 out of the next 91 were also rejected. ⑦ Defendants United States, the BOP, Watts, Nalley, Wiley, Collins, Sudlow, and Knox are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously denying and impeding Plaintiff's access to the courts by erecting unconstitutional and unreasonable barriers to exhausting administrative remedies. ⑧ Defendants United States, the BOP, Watts, Nalley, Wiley, Collins, Sudlow, and Knox have inflicted extreme emotional and psychological pain, injury, and distress on Plaintiff, with the physical manifestations outlined in Claim 1, without any penological purpose. ⑨ Defendants United States, the BOP, Watts, Nalley, Wiley, Collins, and Sudlow are being sued in their official and individual capacities for failing to correct and train Knox for his unconstitutional behavior when informed of them in Plaintiff's letters and grievances.

13. Claim Thirteen: The refusal to mail Plaintiff's letters to the ACLU, attorney Pendergrass, and the U.S. Parole Commission violates the 1st, 5th, and 6th Amendments.

① On 2-7-07 Plaintiff wrote a stamped, sealed, clearly marked "Legal Mail" letter to the ACLU in Denver, and as per BOP policy, hand-delivered it to defendant Knox to mail. On 2-8-07 Knox returned the letter to Plaintiff saying it did not qualify as legal mail and could not be mailed out sealed. ② In late May of 2007 Plaintiff hand-delivered 2 stamped, sealed, clearly marked "Legal Mail" letters to defendant Knox — that were written and given to Knox on 2 separate days — addressed to attorney Taylor Pendergrass of the ACLU in Denver. In June of 2007 attorney Pendergrass informed Plaintiff that neither of those letters were received by anyone at the ACLU. The loss of these letters resulted in the loss of irreplaceable exhibits germane to this case. ③ In July of 2007 Plaintiff was placed on indigent status pursuant to the CFR, and allowed him to receive free medication and postage for legal and "special" mail. The latter includes free postage for letters written to the U.S. Parole Commission. ④ On 7-19-07 Plaintiff gave defendant Knox a sealed, clearly marked "Legal Mail" letter addressed to attorney Pendergrass of the ACLU for posting. On 7-24-07 Knox returned the 7-19-07 letter with a post-it-note attached saying "Not considered Legal. No postage provided." On 7-30-07 when Plaintiff requested a BP-8 from Knox to appeal the decision to refuse to mail the 7-19-07 letter to attorney Pendergrass, Knox told Plaintiff that defendant Collins had instructed him to return the letter to Plaintiff on the grounds that Pendergrass was not Plaintiff's "attorney of record". ⑤ After informing Knox on 7-30-07 that would be named as a defendant in this law suit for denying Plaintiff access to both an attorney and the court, Knox responded by saying Plaintiff just that minute lost his right to free postage. ⑥ On 8-1-07 defendant Sudlow returned 4 letters Plaintiff had given to defendant Knox the previous week. Sudlow informed Plaintiff that he had been removed from indigent status and would have to secure the postage on his own. These 4 letters were "special mail", i.e., written to the BOP, and subject to free postage under the provisions of the CFR. ⑦ Defendants United States, the BOP, Watts, Nalley, Wiley, Cruz, Collins, Sudlow, and Knox have conspired, and acted on that conspiracy, to cover up Knox's

"D. Cause of Action: Claim 13" (Page 2)

retaliatory behavior toward Plaintiff for prosecuting this litigation. The predicate acts and omissions of this conspiracy can be found in: (A) the proximity in time between Plaintiff informing Knox that he would be named as a defendant, and the immediacy of Knox's response that Plaintiff would no longer receive free postage to prosecute this case; (B) the following day Plaintiff was, in fact, removed from indigent status; (C) the return of 4 "special mail" letters by Sudlow that Plaintiff had given to Knox the previous week for mailing; (D) the fact that Nalley, Wiley, Collins, Sudlow, and Knox still refused to provide Plaintiff with free postage under the aegis of the CFR from 7-30-07 to 10-3-07 even though Plaintiff remained on indigent status with the prison hospital throughout this time period; (E) the false assertion of Wiley in his BP-9 response that Plaintiff "still has access to funds", when Plaintiff's commissary account balance read $0.00 from 5-2-07 to 10-10-07; (F) Nalley's 2 different written responses to Plaintiff's administrative remedy — each of which took 2 separate and contradictory positions — as he fumbled to cover up Knox's retaliatory actions; (G) Nalley denying that Plaintiff had ever been on indigent status or received free postage when there is documentation to prove otherwise; (H) Watt's contradicting Nalley's assertion that Plaintiff had never received free postage; (I) the irrefutable proof that Collins, Sudlow, Knox, and the Unknown Mail Room Officer admitting they refused to mail letters Plaintiff wrote to the ACLU, attorney Pendergrass, BOP offices, and the U.S. Parole Commission; (J) the refusal of Nalley, Wiley, Cruz, Collins, and Sudlow to intercede on Plaintiff's behalf to stop Knox's retaliatory actions when repeated asked to do so in Plaintiff's letters; (K) the return of Plaintiff to indigent status and the issuance of free postage on 10-3-07 is certainly circumstantial evidence that Knox did, in fact, remove him from indigent status inappropriately; (L) the return of the 10-19-07 letter Plaintiff wrote to the U.S. Parole Commission — which was returned with a post-it-note attached saying "Not an Attorney, Courts, or Administrative Remedy. Must use social stamps" — Knox informed Plaintiff the Unknown Mail Room Officer wrote this and all other post-it-notes; and (M) the destruction and loss of exhibits in 2 letters Plaintiff gave to Knox to mail to attorney Pendergrass of the ACLU. (8) At all times in Claim 13

"D. Cause of Action : Claim 13 " (Page 3)

of this complaint defendants United States, the BOP, Watts, Nalley, Wiley, Cruz, Collins, Sudlow, Knox, and the Unknown Mail Room Officer are being sued in their official and individual capacities for knowingly, willfully, arbitrarily, and capriciously violating Plaintiff's 1st, 5th, and 6th Amendment. These defendants have acted individually, severally, and collectively in conspiring — and acting on that conspiracy — to deny Plaintiff access to the ACLU in general, to attorney Pendergrass in particular, to the courts, and to the means necessary to exhaust his administrative remedies. Further, these defendants have conspired, and acted on that conspiracy, to cover up Knox's retaliatory actions against Plaintiff for vindicating his constitutional rights. These defendants have inflicted, and will continue to inflict, extreme emotional and psychological pain, injury, and distress on Plaintiff with the physical manifestations outlined in Claim 1 without any penological purpose. (9) Defendants United States, the BOP, Watts, Nalley, Wiley, Cruz, Collins, and Sudlow are being sued in their official and individual capacities for failing to correct and train Knox — and themselves — when informed of Knox's retaliatory and unconstitutional behavior by Plaintiff in both letters and administrative remedies.

14. Claim Fourteen: The Immigration and Nationality Act, 8 USC 1481, Section 349(a), is unconstitutional in that it is discriminatory and violates Plaintiff's free speech and freedom of religion.

(1) Defendant United States is being sued in its official capacity for knowingly, willfully, arbitrarily, capriciously, and unreasonably discriminating against Plaintiff by enacting and enforcing a law that on its face is unconstitutional, discriminatory, and violative of his 1st Amendment right to express his political discontent and his sincere religious beliefs. (2) Matthew 25:31-46 says that "nations" will be judged by how well or poorly we treat the hungry, thirsty, naked, stranger, and imprisoned. Plaintiff, as a tonsured monk, does not want to be judged as a U.S. citizen. This desire is based on his sincere belief that he is carrying enough of his own sins into Judgment Day without adding the sins of this nation. (3) Plaintiff also wants to renounce his U.S. citizenship as an expression of free speech and deep opposition to this country's foreign policy and environmental globicide. As a convicted felon serving a life term in prison, Plaintiff has already been legally barred by defendant from voicing his political discontent at the ballot box. Plaintiff is opposed to the wars and atrocities being done in his name as a U.S. citizen — all of which were based on the lies of our government — and he wants to voice his heartfelt outrage by renouncing his citizenship. (4) The Department of State informed Plaintiff on 2-26-08 that according to Title 8 USC 1481, Section 349(a) there were only two ways a person can renounce their U.S. citizenship: by making a formal renunciation of nationality before a diplomatic consular officer of the United States while being physically outside the borders of the United States; or when the United States is actually in a state of war, and only then with the approval of the Attorney General. (5) Plaintiff appealed to the Attorney General on 3-9-08 where he again renewed his request to renounce his U.S. citizenship on the grounds that the United States was actually and truly in a state of war with Afghanistan and Iraq. This appeal went unanswered. (6) Plaintiff alleges Title 8 USC 1481, Section 349(a) blatantly discriminates against all U.S. citizens, like Plaintiff, who for whatever reasons are physically or economically incapable of leaving the United States — both now or in the future — because this statute makes leaving the borders of the United States an abso-

"D. Cause of Action: Claim 14" (Page 2)

lute prerequisite to renouncing one's citizenship. (7) Plaintiff is serving a life term in prison, and considering his deteriorating health and medical problems outlined in this law suit — to say nothing of the BOP ever to parole him — it seems probable that Plaintiff will die in prison and forever be denied the right to renounce his U.S. citizenship. And even if Plaintiff was paroled one day, the federal parole laws would prohibit him from leaving the borders of the United States long enough to renounce his U.S. citizenship. Indeed, the federal parole laws would prohibit Plaintiff from leaving the state, let alone the country. (8) So while prisoners are usually not recognized as a suspect class in discrimination/ unequal protection claims, Plaintiff believes this is an exception to that rule. Defendant's refusal to allow Plaintiff to renounce his U.S. citizenship because of the existence and prerequisites of Title 8 USC 1481, Section 349(a) is unreasonable and without governmental or penological purpose/interest. Having already silenced Plaintiff at the ballot box, the defendant now wishes to silence Plaintiff on Judgement Day. (9) Defendant United States has inflicted, and continues to inflict, extreme emotional, psychological — and more importantly — spiritual pain, injury, and distress on Plaintiff with the physical manifestations set forth in Claim 1.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   Henman

2. Docket number and court name:

   85-3123    7th Circuit

3. Claims raised in prior lawsuit:

   denial of co-defendant correspondence

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   injunction denied at 807 F.2d 113

5. If the prior lawsuit was dismissed, when was it dismissed and why?

   N/A

6. Result(s) of any appeal in the prior lawsuit:

   Affirmed

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

   ✓ Yes ___ No (CHECK ONE).

2. Did you exhaust available administrative remedies? ✓ Yes ___ No (CHECK ONE).

(Rev. 1/30/07)                                    7

"E. Previous Law Suits" (Page 2)

Plaintiff has filed at least one habeas corpus; one 2255; one Tort Claim; and two civil actions prior to this one. Plaintiff threw away all his legal material about 10 years ago, including all records of the above actions, so he cannot provide the names of defendants, docket numbers, or any specifics requested in these forms. Plaintiff has sustained head injuries and brain damage in the interim that has adversely affected his memory, which will appeal more fully at trial. The only thing Plaintiff can recall is: Plaintiff's habeas was filed in the Southern District of Illinois, which involved a misconduct report he received at Marion, and the petition was granted in part and denied in part; Plaintiff's 2255 was filed in the Middle District of Tennessee, which involved a "no benefit" finding before being sentenced as an adult, and the motion was granted, resulting in Plaintiff being resentenced; Plaintiff's Tort Claim was filed in the District of Colorado, involving the illegal confiscation and destruction of personal property, which was settled out of court in Plaintiff's favor; One civil action was filed in the District of Colorado, involving parole guidelines (this may have been a habeas, Plaintiff cannot recall) and the decision went against Plaintiff; One civil action was filed in the District of Colorado, involving discrimination, and the decision went against Plaintiff. There may have been others, but Plaintiff cannot remember.

" F. Administrative Remedies Exhausted "

① # 422673 (transfer to new PC unit) denied

② # 424739 (removal from PC step-down/pre-transfer unit) denied

③ # 426994 (housing PC's with GP's) denied

④ # 428648 (removal from PC status, housing, and programs) denied/rejected

⑤ # 442935 (loss of eligibility for transfer) denied

⑥ # 444265 (no J-Unit reviews) denied

⑦ # 444878 (precluded from J-Unit/presence of 2 AB members) denied

⑧ # 445168 (precluded from GP programs) denied

⑨ # 445837 (transfer) denied

⑩ # 446741 (due process/reclassification/PC/no hearing) denied

⑪ # 448125 (unconstitutional conditions doctrine) denied

⑫ # 448747 (GP inmate threats) denied

⑬ # 449969 (GP inmates/sleep deprivation) denied

⑭ # 449971 (GP inmate threats on outside rec yards) denied

⑮ # 451377 (retroactive rule-making/APA violations) denied

⑯ # 452244 (policy violations) denied

⑰ # 456678 (no lock-up order) denied

⑱ # 458147 (removal from J-Unit/lies) denied

⑲ # 458361 (staff meeting) denied

⑳ # 457723 (loss of property) denied

㉑ # 460725 (denial/approval J-Unit) rejected

㉒ # 462085 (placement in J-Unit with 10 AB members) denied/rejected

㉓ # 462530 (safety issues/open doors) denied/rejected

㉔ # 462847 (ACLU letter) denied

㉕ # 463272 (refusal to provide free postage) denied

㉖ # 464956 (media visits) denied/rejected

㉗ # 464158 (medical care) denied

㉘ # 464353 (medical care/hepatitis C) denied

"F. Administrative Remedies Exhausted" (Page 2)

(29) # 466836 (supermax/lock-down) denied

(30) # 467435 (safety issue/rat sign) denied

(31) # 468404 (discrimination/unchanging circumstance) denied

(32) # 470571 (due process/grievance procedures) denied

(33) # 470133 (custody/classification) denied

(34) # 471556 (grievances/letters) denied

(35) # 472098 (due process/custody/classification) denied

(36) # 473923 (special mail) denied/granted

(37) # 473910 (grievances/letters) denied/rejected

(38) # 474875 (grievances/non-responsive) denied

(39) # 476043 (not pursued) N/A

(40) # 477738 (safety issues/door malfunctions) denied

(41) # 478239 (job/injury/medical care) denied

(42) # 479256 (medical care) denied

(43) # 479272 (mandatory parole date) denied

(44) # 480200 (sewage spill) denied

(45) # 480572 (medical records) denied

(46) # 481994 (review file/parole tapes)

(47) # 482252 (medical costs) denied

(48) # 489852 (low-iron diet) denied

(49) # 491807 (no rec/physical barriers)

(50) # 492517 (move to G-Unit/retaliation) denied

(51) # 498571 ('98 parole tape)

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

Declarative judgment entered that defendants violated Plaintiff's 1st, 4th, 5th, 6th, and 8th Amendments as set forth in Claims 1 through 14 of this complaint; that defendants violated 18 USC 4042, 18 USC 4081, 5 USC 551, 8 USC 1481, 29 USC 706, 42 USC 12101, 42 USC 1917d, 29 CFR 1613, 29 CFR 1630, 28 CFR 540, 28 CFR 541, and 28 CFR 524 as described in Claims 1 through 14 of this complaint. Injunctive relief ordering defendants to stop all the constitutional, legislative, and regulatory violations described in Claim 1 through 14 of this complaint. Declare 8 USC 1481 unconstitutional. And award monetary damages to Plaintiff in the amount of $1,000,000 00. Order defendants to reimburse Plaintiff for all costs associated with prosecuting this law suit, and any other such relief the court deems proper under 28 USC 2671 and 28 USC 1346 of the Federal Tort Claims Act.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on _____
                    (Date)

_____
(Prisoner's Original Signature)

(Rev. 1/30/07)                    8

## Certificate of Service

I hereby certify that a copy of the foregoing amended complaint was mailed to the Assistant US Attorney's Office, 1225 17th Street, Suite 700, Denver, CO, 80202 — counsel for the defendants — on the _____ day of _____, 2008

*Randy Horwitz*